No. 28,802.

HANS H. THIESSEN, *Appellant*, v. H. C. WEBER, W. G. OBINS, MARK WEBER, THE ALCORN OIL COMPANY, THE MARLAND PRODUCTION COMPANY, THE MARLAND PRODUCTS COMPANY, THE NEW ROYALTY COMPANY, THE LAND OWNERS ROYALTY TRUST and THE UNITED ROYALTY COMPANY, *Appellees*.

(278 Pac. 770.)

Opin-
ion filed July 6, 1929.

*W. L. Cunningham, D. Arthur Walker* and *Fred G. Leach,* all of Arkansas City, for the appellant.

*William H. Zwick,* of Ponca City, Okla., for the appellees.

The opinion of the court was delivered by

HARVEY, J.: This is an action to forfeit and cancel an oil-and-gas lease for breach of the implied covenant reasonably to develop it. It was tried to the court, who made findings of fact and rendered judgment for defendants. Plaintiff has appealed.

Plaintiff was the owner of a quarter section of land in Sumner county. On March 10, 1923, he executed an oil-and-gas lease on this land to R. H. Stewart for a term of five years, and as long thereafter as oil or gas should be produced from the land. The lease contained a provision that if the lessor owned a less interest in the land than the entire undivided fee simple estate therein, the royalties and rentals should be paid the lessor only in the proportion which his interest bears to the whole undivided fee. The lease contained the further provision:

"If the estate of either party hereto is assigned, and the privilege of assigning in whole or in part is expressly allowed, the covenants hereof shall extend to their heirs, executors, administrators, successors, or assigns. . . ."

R. H. Stewart assigned the lease, so far as it pertained to the west half of the quarter section, to H. C. Weber, W. G. Obins and Mark Weber, but neither Stewart nor these assignees have ever made any effort to develop this part of the leased premises for oil or gas. R. H. Stewart assigned the lease, in so far as it pertains to the east half of the quarter section, to the Alcorn Oil Company, which thereafter assigned it to the Marland Oil Company, and thereafter assigned it to the Marland Products Company, one of the defendants herein. This company is a successor in interest, by a reorganization or change of name, of the Marland Oil Company. The Marland Oil Company had leases on other land adjoining this 80 acres on the north and east, and sometime in 1924 drilled a well, which is located about 300 feet east and 300 feet south of the northeast corner of this 80 acres. This proved to be a gas well which, to the time of the trial in this case, had produced gas of the value of $54,-842.86 at the well. In December, 1924, plaintiff executed a written agreement with the Marland Oil Company by which he waived and released his right to demand the drilling of a well on his land to off-

set the gas well above mentioned if the oil company would drill a well in the southwest corner of the 80 acres of land, which it agreed to do, and later did do. This well was completed in May, 1925, and to the time of the trial of this case had produced 66,116.77 barrels of oil. Neither the Marland Oil Company nor its successor, the Marland Products Company, did any more developing on plaintiff's land. Since May, 1925, a well was drilled at a point 300 feet east and 300 feet north of the northeast corner of plaintiff's land, which proved to be a gas well, and also a well was drilled 300 feet west and 300 feet north of the northeast corner of plaintiff's land, which proved to be an oil well. Plaintiff has never waived nor released his right to demand the drilling of a well on his land to offset these two wells.

In December, 1924, plaintiff executed a royalty conveyance to the New Royalty Company for an undivided one-fourth of the oil, gas and minerals under the quarter section of land. It was "subject to the terms" of the lease which plaintiff had executed to Stewart, and provided that the original terms of the lease should not be extended without the written consent of the New Royalty Company, and in the event the lease "for any reason becomes canceled or forfeited," then an undivided one-fourth of the leased interest and future rentals and bonuses should belong to the New Royalty Company. In April, 1925, plaintiff executed a similar royalty conveyance for an undivided one-eighth interest in the oil and gas under this quarter section to The United Royalty Company, and in May, 1925, plaintiff executed a similar royalty conveyance for an undivided one-eighth interest in the oil and gas under this quarter section to the Land Owners Royalty Trust.

This action was filed in July, 1928. Prior to bringing the action plaintiff had requested the other owners of royalty interests to join with him as plaintiff in the action, but they had not agreed to do so. He named as defendants the lessees and the owners of the royalty interests. The defendants Weber, Obins and Weber, assignees of the lease on the west half of the quarter section, made default. The Marland Products Company, the assignee of the lease on the east half of the quarter section, answered and "specifically denies that this plaintiff can maintain this action for the reason that there is a defect of parties plaintiff, in that said plaintiff does not own the entire undivided fee in and to the oil, gas and mineral rights." The answer contained other matters in opposition to plaintiff's right to

cancellation of the lease. The defendant, the New Royalty Company, answered to the same effect and objected to the cancellation of the lease in so far as it was concerned. The defendants, the United Royalty Company and the Land Owners Royalty Trust, answered, setting up their interests as royalty owners, but joined with the plaintiff's request for the cancellation of the leases.

The trial court found that in no event should the plaintiff be given a cancellation of the lease so far as it refers to a tract 600 feet by 600 feet in the southwest corner of the east half of the quarter section, where the defendant, the Marland Products Company, had drilled a well, which was then producing; this area to be extended, if need be, on the showing that more area is required conveniently to operate the well. As to the remaining portion of the lease, the court found—

" . . . that there has been a breach of the implied covenant to develop the land, and that the extent and amount of the damages sustained are so indefinite and uncertain that they cannot be justly estimated, and that the plaintiff has no adequate remedy at law."

The court denied plaintiff any relief, however, upon the ground that the cause "may not be maintained by the plaintiff without the joinder or consent of all of the royalty holders." The judgment entered was without prejudice to a future action in which all the royalty owners would join.

When the action was brought, and when it was tried, the plaintiff was the owner of an undivided one-half of the royalty interest to the oil and gas in place in the entire quarter section. The United Royalty Company was the owner of an undivided one-eighth of such royalty interest, the Land Owners Royalty Trust was the owner of an undivided one-eighth of such royalty interest, and the New Royalty Company was the owner of an undivided one-fourth of such royalty. The owners of three-fourths of the royalty interests prayed for a cancellation of the lease, while the owner of one-fourth of the royalty interests was objecting to such cancellation.

The sole question presented to us is: Can one or more tenants in common, less than the whole number, maintain an action against a lessee to cancel and forfeit the lease, in so far as their interests are concerned, for a breach of an implied covenant properly to develop the lease, where one tenant in common has waived the breach or is willing to do so?

We first note that the implied covenant reasonably to develop a

lease is as much a part of the lease as though provisions to that effect were expressly stated in the lease. (See *La France v. Kashishian*, [Cal.] 269 Pac. 655; *Brewster v. Lanyon Zinc Co.*, 140 Fed. 801, and authorities cited therein.)

The lease contained several provisions with respect to the interests of the parties to the lease less than the whole, and specifically provided that the privilege of either party to assign, in whole or in part, was expressly allowed, and that the covenants thereof should extend to the assignees. By the terms of the lease, therefore, the interests of the parties to the instrument were recognized as being divisible, and it was further provided, by the express terms of the lease, that its covenants should extend to such assignees. Appellees concede that by these provisions of the lease its covenants with reference to the payment of rent and royalties were stipulated to be divisible in character, but argue that such divisibility does not extend to an action to cancel the lease. The wording of the lease does not make this distinction. It would seem, therefore, that by the terms of the lease the right of the assignee of the whole, or any part, of the interests of either of the parties to the lease to maintain any appropriate action to protect his interests, was expressly recognized and provided for.

Any person in possession of real property may bring an action against any person who claims an estate or interest therein for the purpose of determining such adverse estate or interest (R. S. 60-1801). All persons having an interest in the subject of the action and in obtaining the relief demanded may be joined as plaintiffs (R. S. 60-410), and any person may be made a defendant who has, or claims, an interest in the controversy adverse to plaintiff, or who is a necessary party to a complete determination or settlement of the questions involved. (R. S. 60-411.) Of the parties to the action, those who are united in interest must be joined as plaintiffs or as defendants, but if the consent of one who should have been joined as plaintiff cannot be obtained, he may be made a defendant, the reason for so doing being stated in the petition. (R. S. 60-412.) In short, our statutes are so framed as to permit any person who has, or claims, an interest in real property to bring and maintain an action against any one or more persons claiming adversely to him for the determination of such interest. Naturally, parties having interests in common should be joined as plaintiffs or

as defendants, but the fact that one having an interest in common with plaintiff declines to join with plaintiff in bringing the action does not prevent plaintiff from bringing an action and having his interests determined, for such a person may be made defendant, plaintiff stating the reasons for so doing. From what is here said it necessarily follows that the argument of appellees to the effect that all the royalty interests must join as plaintiffs in the action is without merit.

Appellees argue that the implied covenant of the lease that the lessee would reasonably develop the leased premises is an indivisible covenant, and that the owner of an undivided interest in the oil and gas in place in the land cannot maintain an action to have the lease declared canceled because of the failure of the lessee to perform this covenant, but that it is essential for all of the owners of such oil and gas units to unite either as plaintiffs or as defendants in such an action. This was the view taken by the trial court, and formed the basis of its judgment. Let us examine this question. We have heretofore seen that the implied covenant reasonably to develop the leased premises is as much a part of the lease as though it were expressly written therein. The covenants of the lease are of a nature that they naturally go with the land. If the land were sold within the term of the lease, such sale would not abrogate the lease, but it would continue in force, notwithstanding such sale. Such a sale need not be for the entire body of the land owned by the lessor. He might sell the land in tracts, dividing it vertically, or he might sell an undivided interest in it, or any part of it, such as the surface or the minerals, thus dividing it horizontally. If the covenants of the lease go with the land, they naturally go with each portion of it, however it may be sold, whether vertically or horizontally. In 15 C. J. 1259 it is said:

"A covenant that runs with the land is divisible into as many parts or interests as the land itself may be divided into by subsequent successive conveyances, and the grantee of each parcel or interest may, as to the same, maintain suit upon such covenant against the original covenantor or his legal representative; but the interest of the grantee must be in part of the land as distinguished from part of the estate."

Many authorities are there cited giving application of the rule and the reasons for it.

It is argued that in this case the owners of the royalty interests are

tenants in common, and that one tenant in common cannot do anything to the detriment of the other tenants in common, and from this it is argued that the plaintiff, who is the owner of an undivided one-half interest in the oil and gas, and the defendants, the United Royalty Company and the Land Owners Royalty Trust, each owning an undivided one-eighth interest, cannot have this lease canceled over the objection and against the interest of the New Royalty Company, the owner of an undivided one-fourth interest. The premise of this argument is sound, but its conclusion is fallacious. The New Royalty Company, which is willing to waive the nonperformance of the covenants of the lease, has no right to bind its other cotenants, the plaintiff and the United Royalty Company and the Land Owners Royalty Trust, and thus require them to waive it. Each of the tenants in common has the right to insist on the cancellation of the lease so far as he is concerned, or to waive it, as he likes, but whichever position he takes in the matter should not be controlling as to the other cotenants. Appellees argue that such a holding would give the lessee the right to operate on the leased premises under authority from one cotenant and make it a trespasser as to the other cotenants. But this conclusion is inaccurate. The royalty conveyances executed by plaintiff to the New Royalty Company, the United Royalty Company, and the Land Owners Royalty Trust, authorize each of them (subject to the existing lease) to go on the premises and develop for oil and gas to the extent of their interest conveyed by the instrument. If the present lessee were to surrender its lease, any one of the royalty owners could exercise any right on the premises consistent with the terms of the instrument which created his royalty interest without being, as to the other royalty owners, a trespasser in exercising such rights; and any royalty owner could assign or transfer any right which he has under the instrument which created his royalty, and the assignee or transferee could exercise the rights so assigned or transferred without being, as to the other royalty owners, a trespasser in exercising such rights. If this lease be now canceled as to all of the royalty interests except that of the New Royalty Company, its situation and that of the lessee would be the same as though the present lease were canceled in its entirety and the New Royalty Company were to execute a new lease for the development of the premises.

We are not unmindful of the cases cited by the appellees (*Calvert et al. v. Bradley et al.*, 16 How. 580 [U. S.]; *Union Gas & Oil Company v. Gillem*, 212 Ky. 293; *Howard v. Manning*, 79 Okla. 165;

*Krost v. Moyer,* 166 Minn. 153; *Cochran v. Gulf Refining Co.,* 139 La. 1010) and allied cases, each of which holds that certain leases or covenants are indivisible, and that all the parties must join in an action based on such covenants. We shall not stop to analyze these cases in detail. They tend to support the ruling of the court below. We do not regard them as being in harmony with the scheme of the law of this state, nor with the former decisions of this court, and there are many decisions to the contrary. (*Blake v. Everett & others,* 1 Allen 248; *Fields v. Squires* (No. 4776), 9 Fed. Cas. 29; *Empire Gas & Fuel Co. v. Saunders,* 22 F. (2d) 733; *Pearson v. Richards et al.,* 106 Ore. 78; *Kelly v. Parker et al.,* 221 Ill. App. 273; *Roberts v. Holland,* 1 Q. B. 665 [1893]; *Dickinson v. Hoomes's Adm'r & als.,* 8 Gratt. [Va.] 353; *Sullivan v. Sherry and another,* 111 Wis. 476; *Bayside Land Co. v. Dabney,* [Cal.] 265 Pac. 566.)

But we do not deem it necessary to analyze these authorities in detail. Our own statute (R. S. 16-101) provides that contracts which by the common law are joint only should be construed to be joint and several, and the scheme of our law, as previously outlined herein, is that anyone having, or claiming, an interest in property, whether that be real or personal, may bring an action to have that interest determined, and join with him, or make defendants, all persons necessary for a proper determination of the questions involved. The relief to be granted must necessarily depend upon the facts disclosed by the evidence. (*Greer v. Higgins,* 8 Kan. 519; *Jeffers v. Forbes,* 28 Kan. 174; *King v. Hyatt,* 51 Kan. 504, 34 Pac. 461; *Curry v. Railway Co.,* 58 Kan. 6, 18, 48 Pac. 579; *Horner v. Ellis,* 75 Kan. 675, 90 Pac. 275; *Banchor v. Proctor,* 88 Kan. 510, 129 Pac. 526; *Jewell v. Gann,* 100 Kan. 43, 163 Pac. 645; *Finley v. Dubach,* 105 Kan. 664, 185 Pac. 886; *Klingbiel v. Neubauer,* 111 Kan. 716, 208 Pac. 255.)

In *Zinc v. Freeman,* 68 Kan. 691, 75 Pac. 995, this court canceled a lease as to some cotenants and let it stand as to others, but this decision was not based on the question here presented. Repeatedly this court has canceled a lease as to part of a tract of land and let it stand as to the remaining portion. Hence to cancel the lease in this case in so far as it pertains to some of the cotenants and let it stand as to another is neither novel nor new in the jurisprudence of this state.

Any conclusion other than the one we have reached would make it possible for the lessee to become the holder, either directly or through an associate, of a small share of the royalty interest, and defeat

either the proper development of the lease or its cancellation, to the serious detriment of the other royalty owners. This would create a situation decidedly unjust to them. Indeed, in this case there was evidence tending to show that the New Royalty Company was owned by the Marland Products Company or its officers, but the trial court made no finding on that point and we do not find it necessary to predicate a decision thereon.

Since the facts are found, and no one controverts them, there is no necessity for a new trial. The judgment of the court below is reversed with directions to enter judgment in accordance with the views expressed herein.