**ALPHIN et al. v. GULF REFINING CO.
et al.**

**No. 13.**

District Court, W. D. Arkansas,
El Dorado Division.

June 27, 1941.

Mahony & Yocum, Robert C. Knox, and C. E. Wright, all of El Dorado, Ark., for plaintiffs.

Cockrill, Armistead & Rector, of Little Rock, Ark., and W. E. Patterson, of El Dorado, Ark., for defendants.

MILLER, District Judge.

On October 18, 1938, plaintiffs filed suit in the First Division of the Chancery Court of Union County, Arkansas, seeking cancellation of a certain oil and gas lease insofar as it covers the Northwest Quarter and the Northwest Quarter of the Northeast Quarter of Section 7, Township 18 South, Range 14 West, in Union County, Arkansas.

The plaintiffs are the owners in fee simple of the surface of the 200-acre tract and own substantial interests in the oil, gas and other minerals under the said tract of 200 acres.

The defendants, other than the Gulf Refining Company, own all the other undivided interests in the oil, gas and other minerals under the tract. A stipulation filed in the case recites in detail the ownership of the various parties in the surface and in the oil, gas and other minerals in the tract. All defendants were duly served with process except the defendant, C. W. Pierce, who it appears was dead at the time of the filing of the suit and his heirs or devisees have not been made parties to the suit. Pierce, during his lifetime was the owner of an undivided 1/16 interest in all of the oil, gas and other minerals in and under the Northwest Quarter of the Northeast Quarter of the Northwest Quarter of Section 7, Township 18 South, Range 14 West, a 10-acre tract.

The suit was seasonably removed to this court by the defendant, Gulf Refining Company.

The oil and gas lease was executed on April 15, 1919, by J. T. Van Hook, the then owner of the entire fee-simple estate in 440 acres of land covered by the lease. By mesne conveyances T. J. Woodley and others became the owner of the lease as to the 200 acres in controversy, and on December 14, 1928, Woodley, as trustee, and others, assigned the lease to the Gulf Refining Company of Louisiana. On February 1, 1936, the lease was assigned to the defendant, Gulf Refining Company, a Delaware corporation, by the Gulf Refining Company of Louisiana. The defendant, Gulf Refining Company, a Delaware corporation, is the corporate successor of the Gulf Refining Company of Louisiana.

By the terms of the lease the lessee, his heirs and assigns were granted all oil and gas in and under the lands therein described, with the right of ingress and egress for the purpose of drilling, mining and operating for gas, oil or water, and to conduct all operations, to erect storage tanks and other necessary structures and to lay all pipes necessary for the production, mining and transportation of oil, gas and water.

The lease further provided:

"To Have and to Hold the above described premises, unto the said party of the second part, his heirs and assigns, on the following conditions: In case operations for either the drilling of a well for oil or gas, is not commenced and prosecuted with due diligence within one year from this date, then this grant shall immediately become null and void as to both parties; provided, that second party may thereafter prevent such forfeiture from quarter to quarter for four additional years by paying to the first party the sum of $27.50 per 3 months until such well is

commenced, and it is agreed that the commencement of a well shall operate as full liquidation of all rentals under this provision during the remainder of the term of this lease, which payments can be made at Citizens National Bank of El Dorado, or payable direct to parties of the First Part.

"In case the party of the second part should bore and discover either oil or gas, then in that event this grant, encumbrance or conveyance shall be in full force and effect for twenty-five years from the time of the discovery of said product, and as much longer as oil or gas may be produced in paying quantities thereon."

The plaintiffs alleged that the lease had been abandoned and that it has been forfeited by the failure of the defendant, Gulf Refining Company, and its predecessors in title to seasonably and reasonably explore and develop the lands under the lease for the production of oil and gas.

The defendant company denied these allegations of the plaintiffs, and denied that the plaintiffs had made due demand upon it for exploration and development, and alleged that the plaintiffs were estopped to declare a forfeiture. That the plaintiffs not being the owners of the entire mineral estate cannot maintain the suit, averring that the covenants of the lease for development are indivisible and suit can only be instituted where there has been an election to do so by all the owners of the reversion and where the owners of such reversion have joined in the demand for such performance.

The following facts are undisputed: The easterly 240 acres, or the remainder of the land contained in the original lease executed by J. T. Van Hook on April 15, 1919, passed by mesne conveyances to Grimes Brothers, Inc., who, with their predecessors in title, have drilled 10 wells, of which 9 are now producing oil.

There were drilled upon the 200 acres involved in this suit by T. J. Woodley, the assignor to the Gulf Refining Company of Louisiana, two gas wells. One of these wells was drilled in 1921 and the other in 1922. The gas produced by these two wells was sold to the Arkansas Natural Gas Company, and he received $129,600 therefor. Both of these gas wells had ceased to produce gas and were abandoned prior to the sale and assignment of the lease to the Gulf Refining Company of Louisiana, on December 14, 1928. No operation in search of oil or gas was conducted on the land in controversy except the two wells drilled by Woodley.

The assignment to the Gulf Refining Company of Louisiana included 16 leases upon other lands in addition to the land involved in this suit, and provided: "The consideration of this sale and assignment is the sum of Thirty Eight Thousand Three Hundred Ninety Three and 50/100 ($38,393.50) Dollars, cash in hand paid, receipt of which is hereby acknowledged, and the obligation on the part of Gulf Refining Company of Louisiana to begin within a reasonable time from date hereof, the work of deepening the well known as Woodley No. 1, in Section 6, Township 18 South, Range 14 West, and the testing for production of oil of the well known as Woodley No. 1, in Section 7, Township 18 South, Range 14 West."

The Gulf Refining Company of Louisiana did not test for production of oil the well known as Woodley No. 1 in Section 7, Township 18 South, Range 14 West, located in the Northwest corner of the Northeast Quarter of the Northwest Quarter of Section 7. However, the Gulf Refining Company of Louisiana did deepen the well in Section 6 during December, 1928, and January, 1929, and in the spring of 1929 drilled a well in Section 1, Township 18 South, Range 15 West, known as the Rosa Cook well. Both were dry and were abandoned by the Gulf Refining Company of Louisiana.

The other leases acquired by the Gulf Refining Company of Louisiana by the assignment from Woodley, trustee, and others, were permitted to expire and no claim is now asserted to any of the leases included in that assignment except the lease on the 200 acres of land involved in this suit.

Prior to the conveyance of the easterly 240 acres to Grimes Brothers, Inc., Woodley had drilled and brought in 4 oil wells on the 240-acre tract. Grimes Brothers, Inc., subsequently drilled and brought in 5 other oil wells, and J. F. Miller had drilled and brought in one well in the Southwest Quarter of the Northeast Quarter of Section 7, making in all 10 wells on the easterly 240 acres included in the lease.

The assignment from Gulf Refining Company of Louisiana of the 200 acres involved in this suit to the defendant, Gulf Refining Company, was simply to

effect a transfer of title in a corporate reorganization, and neither the defendant, Gulf Refining Company, or its predecessors have drilled for oil and gas on the property involved herein, and there has been no production of either oil or gas from the 200 acres since the lease thereon was acquired by the Gulf Refining Company of Louisiana, December 14, 1928. The last exploration made on the 200 acres involved herein was made by T. J. Woodley in 1922, when he completed a producing gas well on the Northwest Quarter of the Northeast Quarter of Section 7, which well had an initial daily production of approximately 5,000,000 cubit feet of gas. That well ceased to operate and was abandoned prior to 1928. The other well that was drilled in the Northwest corner of the Northeast Quarter of the Northwest Quarter of Section 7, had an initial daily production of approximately 5,000,000 cubit feet of gas and it ceased to produce in 1924, and has not produced since that year.

All of the wells drilled on the land included in the lease were drilled to the approximate depth of 2,200 feet and all produced either oil or gas in the Nacatoch sand.

Oil or gas in commercial quantities have been discovered in formations below the Nacatoch sand in Union County. Each of the several sands of an oil field do not necessarily extend throughout the entire area, but are present in all or some part of each field that has been developed in Union County.

The original lessor, J. T. Van Hook, died before the filing of this suit.

It was stipulated that a representative of the engineering department and a representative of the geological department of the defendant would each testify that in his opinion and judgment another well would not have been profitable at any time since the Gulf Refining Company of Louisiana acquired title to the lease.

J. C. Thompson, a geologist in the employ of the Root Petroleum Company, testified that the 200 acres appeared favorably situated for the production of oil, and that a well could have been made by the Gulf Refining Company of Louisiana on the Rosa Cook lease in Section 1, Township 18 South, Range 15 West, in the Nacatoch sand, and that the company had a fair chance to have made a well in the Travis Peak formation.

H. H. Grimes testified that in his opinion the Gulf Refining Company of Louisiana could have obtained oil in commercial quantities on the 200 acres in question from the Nacatoch sand and also from the deeper formations; that a well drilled on the land involved to the horizons penetrated in the Nick Springs field north of the land in controversy would have produced oil in commercial quantities in his opinion.

The testimony further showed that Grimes Brothers, Inc., owners of the easterly 240 acres hereinbefore referred to, attempted to assemble a block of acreage for the purpose of drilling a deep test well; that the 200-acre tract in controversy was a part of the desired block, and that all of the owners of the Van Hook lease, other than Judge W. E. Patterson, had executed a new lease in favor of C. E. and H. H. Grimes to be delivered if cancellation or release of the defendant company to the 200-acre tract could be obtained.

It seems that the Fohs Oil Company drilled in Section 5, Township 18 South, Range 14 West, but the well was not a producer, although it had many excellent showings of oil, but as a result of the showing made by the Fohs Oil Company in the well drilled in Section 5, the Nick Springs field centering in Section 31, Township 17 South, Range 14 West, was brought in with the discovery of a commercially producing well in 1940, and at the time this suit was tried there were 14 producing wells in that field, producing from the four sands in the Travis Peak formation, ranging in depths from 3,200 to 3,600 feet.

The briefs filed by learned counsel for the parties have greatly lessened the labors of the court in determining the issues involved in this suit.

(1) It is admitted that the implied covenant to develop is a condition subsequent, and that the lessor may for failure to comply with that condition seek the aid of equity in cancelling the lease, but counsel for defendant, Gulf Refining Company, contends that a conveyance by the lessor of a portion of the reversion destroys the condition, or, in other words, that the condition subsequent in the lease under consideration was abrogated when Van Hook, the original landowner and lessor, after the execution of the lease, conveyed in fee simple absolute certain portions of the

minerals in the lands covered by the lease to divers and sundry persons and thereby rendered the estate created by the lease absolute and freed from the condition.

■ The rule under the common law was that where the reversion in part of the demised lands is assigned, neither the lessor nor the assignee can take advantage of a condition broken, because the condition being entire is not apportioned by the assignment, but is destroyed by the assignment.

In § 514 of Volume 3, Summers Oil and Gas, Permanent Edition, at page 200, it is said: "Whatever the reason may be, it has never been contended that the conditions of a lease are destroyed by an assignment by the lessor of his interest in a portion of the land."

■ The learned author had reference, of course, to an oil and gas lease such as is involved here. An oil and gas lease does not create the ordinary relation of landlord and tenant. The lessee does not acquire the right to occupy the property for residence, mercantile, manufacturing or agricultural purposes. He acquires possession of the property only for the purpose of drilling, mining, and operating for gas or oil and to conduct all necessary work on the land in furtherance of the object or his search for oil and gas and for the saving of the oil and gas if found. The lessee does not pay a stipulated sum as rental for the use of the premises, but may pay a stipulated sum for delay in the beginning of drilling operations. Therefore, in my opinion, the common-law rule does not apply to the ordinary oil and gas lease and the plaintiffs are not prevented from insisting upon a compliance with the implied covenant to develop. Millar v. Mauney, 150 Ark. 161, 234 S.W. 498; § 154, Volume 1, Summers Oil and Gas, Permanent Edition.

(2) The defendant company contends that the lease does not automatically terminate upon the failure of the lessee to comply with the implied covenant to develop. As an abstract proposition the contention of the defendant is correct, but in this case the testimony shows that J. H. Alphin, one of the plaintiffs, after the plaintiffs had acquired their interests in the property, called upon the vice president of the defendant company, and who was in charge of their land department, relative to the development of this lease, and that Mr. Blocker advised him that "they were not going to do anything with it unless there was some development in the vicinity that would warrant them drilling it". This information was conveyed to one of the plaintiffs in 1937. On March 23, 1938, the plaintiffs by a letter addressed to the defendant company formally requested the execution of a release and stated therein that they considered the lease forfeited and abandoned. This testimony is not denied, but counsel ingeniously argue that the action on the part of the plaintiffs was nothing more than a notice, which in itself was an attempt to declare a forfeiture and that the mere announcement by the lessee, the defendant company, of an intention not to drill, would not excuse the lessor's failure to give further notice.

It is contended that the action of the plaintiffs did not amount to a demand for compliance with the covenant to develop.

■ It should be remembered that the corporate predecessor of the defendant company first acquired ownership of the lease on December 14, 1928; that it had made no attempt to develop any part of the 200 acres involved in this suit. Nine years later, in 1937, the plaintiffs first talked to the vice president of the company. Certainly the defendant company knew from that conversation that the plaintiffs expected the defendant company to comply with the covenants of the lease. A few months later the letter above referred to was written to and received by the defendant company. It was incumbent upon the defendant company and its predecessors to develop the land under the lease, and this should have been done within a reasonable time. The fact that the plaintiffs or their predecessors in title had failed to make demand for development did not deprive the plaintiffs of the right to take advantage of the forfeiture brought about by the inactivity of the defendant company during an unreasonable length of time. It was not incumbent upon the plaintiffs to do anything and nothing short of an affirmative act which might lead the defendant company to believe that a forfeiture would not be demanded would deprive the plaintiffs of the right to take advantage of such forfeiture if, in fact, a forfeiture had resulted from the inactivity of the lessee or from the failure of the defendant company to develop.

The action of plaintiffs was sufficient. The delay of the defendant company and its predecessors in title was unreasonable and the defendant company is not in a position to complain of the terms of the notice or when it was given. Mansfield Gas Co. v. Parkhill, 114 Ark. 419, 169 S.W. 957.

(3) The defendant company contends that a suit to enforce a forfeiture for breach of the implied covenant to develop cannot be maintained by those who own less than the entire reversion.

The defendant company alleged: "This defendant alleges that the implied covenants in the lease are indivisible and that an action for forfeiture of the lease for failure to perform such implied covenants can only be instituted where there has been an election so to do by all of the owners of the reversion and where all of the owners of such reversion have joined in the demand for performance."

All of the owners of interest in the oil and gas in the 200 acres involved herein have not joined as plaintiffs in the demand for performance. All have been joined as parties defendant and served with process except the heirs of Pierce, referred to at the beginning of this opinion.

The statement by W. E. Patterson, counsel for some of the defendants, indicates that it is immaterial to him and to his clients whether the lease be forfeited and that their interests may be determined by the action of the court, but regardless of the desires of the other owners, the fact remains that they are not parties plaintiff and are not asking that the lease be cancelled. I have already held that the notice given by plaintiffs is sufficient. The other owners did not join with the plaintiffs in giving that notice. Such holding, however, does not answer the contentions now made by the defendant company.

In Summers Oil and Gas, Volume 3, § 514, Permanent Edition, it is said: "There is a conflict in the cases, however, as to whether the lessor may sue the lessee without joining persons to whom he has assigned an undivided share in the royalty interest. In support of the rule requiring joinder of tenants in common it is argued that those cotenants who secure a decree canceling the lease in so far as it affects them may then claim an equal interest in the oil and gas recovered by the lessee as nonjoining cotenants. The rule, however, has been criticized, and it is difficult to see why the courts should be so concerned in protecting a lessee who has breached the conditions of his lease."

On page 202 in the same section it is said: "Where the lessor has assigned his interest in part of the land, it would seem reasonable, if there has been a breach of the covenants considering the lease as entire, to allow either the lessor or a partial assignee of the lessor the benefit of the covenant. Since the lessee has been guilty of a breach, any one whose interest is affected should have a remedy. In some cases partial assignees have been allowed to sue without joining the lessor and without the question of joinder being raised. Yet, since these suits to enforce the lessee's covenants are usually brought in equity, it is probable that the lessor and his partial assignee are both necessary parties, but it would seem that the nonjoining party could be made a party defendant as has been done where he fraudulently refused to join."

Many courts hold that the lessee's duties under implied covenants are divisible. Without question that is the rule in Arkansas. In the case of Standard Oil Company of Louisiana v. Giller, 183 Ark. 776, 777, 38 S.W.2d 766, the court said: "This court is firmly committed to the doctrine that in any oil and gas lease in which royalties constitute the chief consideration, an implied covenant exists on the part of the lessee to explore the property with reasonable diligence so as to produce oil and gas in paying quantities upon the entire tract. Especially is this true after either or both commodities has or have been discovered on any part of the tract. The reason is that oil and gas are of a wandering and vagrant character in their natural state. [Citing many cases.]"

In those jurisdictions where the implied covenants are held to be indivisible the lessee's duties of development relate to the whole of the land leased and not to separate units. In those States neither the lessor nor the lessee merely by dividing his interest can in any way change these duties into duties to develop particular portions of the demised premises. As heretofore stated, the rule in Arkansas is that the covenants to develop extend to the entire tract, and the development of a portion of the lease by either the original lessee or his assignee does not relieve the holders of the remainder of the lease from proceeding with the development of the tract as an en-

tirety in the manner contemplated by the covenants of the lease.

In the case of Thiessen v. Weber et al., 128 Kan. 556, 278 P. 770, the question presented was whether one or more tenants in common less than the whole number could maintain an action against a lessee to cancel or forfeit the lease insofar as their interests were concerned for a breach of an implied covenant properly to develop the lease where one tenant in common had waived the breach or was willing to do so.

The court answered the question in the affirmative and held that the suit could be maintained.

The covenants of the lease involved herein run with the land, and they naturally go with each and every portion of the land.

The reasoning of the court in the Thiessen v. Weber case, supra, is sound, and in my opinion completely answers the contention of the defendant company.

In view of Sections 1284, 1311, 1312, 1313 and 1809 of Pope's Digest of the Statutes of Arkansas, and since the rule in Arkansas is that the covenants of the lessee are divisible in that each assignee of necessity must properly develop his segregated portion, I hold that the plaintiffs can maintain this suit, even though they are the owners of less than the entire reversion.

■■■ (4) This brings me to a consideration of whether the defendant company has failed to proceed with the search and with the development of the land involved with reasonable diligence according to the usual course of business. The cases decided by the Supreme Court of Arkansas, except Hughes v. Cordell, 174 Ark. 757, 296 S.W. 735, uniformly hold that there is an implied covenant on the part of the lessee in an oil and gas lease to proceed with reasonable diligence in the search for oil and gas and, also, to continue the search with reasonable diligence to the end that oil and gas may be produced in paying quantities throughout the whole of the leased premises. See Drummond v. Alphin, 176 Ark. 1052, 4 S.W.2d 942; Ezzell v. Oil Associates, Inc., 180 Ark. 802, 22 S.W. 2d 1015; Standard Oil Co. v. Giller, 183 Ark. 776, 38 S.W.2d 766; Smith et al. v. Moody, 192 Ark. 704, 94 S.W.2d 357, and cases cited therein.

■■■ The defendant company or its immediate predecessor, Gulf Refining Company of Louisiana, did not continue the search for oil and gas on the 200 acres with reasonable diligence. In fact, neither did anything insofar as the 200 acres involved is concerned. The immediate predecessor of the Gulf Refining Company of Louisiana did develop two gas wells on the property and Woodley, in his assignment of the lease on the 200 acres provided that the Gulf Refining Company of Louisiana should test for production of oil one of the old gas wells on the 200-acre tract. This was not done.

Giving due deference to the judgment of the defendant company as an operator and considering all of the facts as disclosed by the testimony, I do not think the defendant, Gulf Refining Company, has acted to protect the mutual interests of itself and the plaintiffs. The defendant cannot consider its own interest without regard for the interest of the plaintiffs. It has failed to perform the contract without a valid excuse or reason. It appears reasonably certain that the 200 acres is susceptible of productive development in the Nacatoch sand, and that in all probability producing wells might be obtained in the deeper sands. The defendant cannot be excused from complying with the requirements to develop on the plea of expense or cost.

Therefore, a decree will be entered for plaintiffs as prayed.