HUNT v. McWILLIAMS.

4-9238                                240 S. W. 2d 865

Opinion delivered November 20, 1950.

Rehearing denied December 15, 1950.

*Gaughan, McClellan & Gaughan* and *Mahony & Yocum*, for appellant.

*Keith & Clegg*, for appellee.

GRIFFIN SMITH, Chief Justice. Counsel for appellee McWilliams state the substance of the jurisdictional problem in this controversy when they assert that because their client is sole owner of the forty acres he may sue for cancellation of an oil and gas lease; and this may be done without bringing into the litigation non-participating royalty holders whose aggregate interests were 98/113ths. The trial court held that the royalty owners were not indispensable parties, since their concern was with oil [and gas] as such, in contradistinction to operations or plans pertaining to production, or use of the land from which such minerals might be taken and brought to the surface as merchantable commodities.

In 1938 McWilliams and others who then owned the land executed an oil and gas lease to J. E. Childers on 80 acres in Columbia County. The primary period was ten years. Before the suit resulting in this appeal was filed McWilliams acquired the interests of those who were associated with him in 1938. Since legal descriptions are not important here, the two tracts will be referred to as the *east* forty, and the *west* forty. By assignment leasehold estates were created, with the result that in October, 1948, all of these leases were owned by Hassie Hunt Trust, subject to overriding royalties in favor of one individual and three oil companies, and by another whose interest is spoken of by appellee as "an oil payment."

Under permit issued in October, 1939, an oil well was drilled on the *east* forty at a cost of slightly more than $60,000. Since that time it has been producing sufficiently to come within the allowable fixed by the Arkansas Oil & Gas Commission. The original lease provided that it should remain in force after the ten year period if gas or oil should be produced.

Early in 1940 a dry hole was drilled on the *west* forty at a cost approximately equal to expenditures for the producing well. If, in leasing the land in 1938, the

two tracts had been treated separately through use of words from which the legal conclusion would attach that life of the grant of one forty did not depend upon development of the other, it might be argued that the explorations made in good faith in 1940 with consequent failure of production terminated the lease on *that* acreage when the primary period expired. But the 'two forties are treated as a whole in the lease: ''The northwest quarter of the northwest quarter of section fifteen and the northeast quarter of the northeast quarter of section sixteen, all in township eighteen south, range nineteen west, *and containing eighty acres,* more or less.'' It follows that the producing well, *prima facie,* continued the lease on the full eighty acres, and the *initial question is* whether a court of equity had the right to entertain a petition by appellant for cancellation on the allegation that there had been a failure to reasonably develop the *west* forty, and to decree relief without consent of the royalty owners and in circumstances where they were not given an opportunity to be heard. Appellants concede that the dry hole on the *west* forty has been abandoned, but say the acreage has not. Because of the comparatively new technique in developing oil lands, and the ability of drillers to go deeper than formerly (while at the same time taking care of shallow production) it is contended that abandonment is not implicit in the mere fact of prolonged failure to drill. We do not deal with merits of the petition for cancellation, but rest the decision upon equitable rights of the royalty holders to be heard.

The point does not appear to have been decided by this court in litigation involving royalty owners situated as were those with whom we are dealing. In other jurisdictions where similar issues have been adjudicated results have sometimes been influenced by domestic statutes.

We assume—and the assumption presupposes that none of the parties here was actuated by ulterior motives —that in seeking cancellation the landowner did not intend to serve his own interest to the detriment of roy-

alty owners. McWilliams relies upon words in the royalty deeds reserving to the grantor the exclusive right to lease in whole or in part "without interference or hindrance upon the part of the [royalty owners"]. He also assumes that the right to lease and the right to cancel and re-lease amount to the same thing.

The original Chancery action was removed to Federal Court (El Dorado District) upon a showing of diversity of citizenship. McWilliams then amended his complaint by alleging interests of the royalty holders and petitioning that they be made parties. Judge Miller ruled that this had the effect of destroying complete diversity, hence he sent the cause back to Chancery. It was Judge Miller's belief that the royalty holders were indispensable parties, and the record shows that their addresses were known to the plaintiff. Because of these facts class or virtual representation is not involved, the essential knowledge having been shown.

A Federal case bearing upon issue similar to those raised by appellants here is *Calcote* v. *Texas Pac. Coal & Oil Co.*, (Fifth Circuit) 157 Fed. 2d 216. While the question involving jurisdiction based on diversity of citizenship is extensively discussed, the opinion on rehearing closes with these statements: ". . . These royalty grantees had separate and distinct vested mineral interests, which would necessarily be prejudicially affected by confirmation as well as cancellation of the lease. . . ." The Court then quoted from *Mallow* v. *Hinde,* 12 Wheat. 193, 198, 6 L. Ed. 599, where a jurisdictional question was being considered. Said Mr. Justice TRIMBLE: "We [put this case upon a ground much broader than that of jurisdiction] which must equally apply to all courts of equity, whatever may be their structure or jurisdiction. We put it on the ground that no court can adjudicate directly upon a person's rights without the party being either actually or constructively before the Court."

The Supreme Court of Kansas, *Thiessen* v. *Weber,* 278 Pac. 770, held that failure of certain royalty grantees

to· be joined in a suit to cancel leasehold rights did not prevent action by other owners. But the persons who complained of the lower Court's dismissal for non-joinder of necessary parties were asked to join in the suit. When they declined to do so they were made defendants. The appellate Court said that the unwillingness of one or more of those holding royalty interests to permit cancellation did not prevent others from maintaining the action "to the extent of his interest."

In *Matthews* v. *Landowners Oil Ass'n*, opinion by the Texas Court of Civil Appeals, (Amarillo District) 204 S. W. 2d 647, it was held that oil and gas lessors and their assigns were necessary parties to a suit to cancel leases involving a pool of lessors' interests in royalties arising from production on any of the land included in the pool, the alternative contention being that the leases created a trust with the lessee as trustee, so as to render a lessee the only necessary party. Numerous facts distinguish the case from the litigation at bar. However, the opinion contains this expression: "In a suit to cancel a written instrument all persons whose rights or relations with the subject-matter of the suit will be or might be affected by cancellation, are necessary parties."

Judge JOHN E. MILLER, *Alphin* v. *Gulf Refining Co.*, 39 Fed. Supp. 570, cites Prof. Summers' text on Oil and Gas v. 3, § 514, Permanent Edition, where undivided shares in royalty interests are mentioned.

The Supreme Court of Texas, *Shell Oil Co.* v. *Howth*, 159 S. W. 2d 483, in passing on an oil and gas controversy used this expression: "Furthermore, it appears that after Howth executed the lease to the Shell Company he conveyed a part [of his royalty interest] to other parties. These vendees were not made parties to the suit. They were necessary parties to the action to cancel the original lease." The Court cited *Sharpe* v. *Landowners Oil Ass'n*, 92 S. W. 2d 435, 127 Tex. 147. In the Sharp case it was said: "It is settled beyond all question in this state that in a suit to cancel a written instrument all persons whose rights, interests, or relations with or through

the subject-matter of the suit will be affected are necessary parties.''

Arkansas Statutes, § 27-814-15 (§§ 36-37 of the Civil Code) were construed for this Court by Mr. Justice BATTLE in 1886. An excerpt from the opinion is: ''From these provisions of the statute it is clear that it is within the discretion of the court, in an action for the recovery of real or personal property, to order any person having an interest in the property to be made a party when he applies and asks that it be done. But this discretion is limited to the right to determine the controversy between the parties already before the court. The obvious intention of the statute is to require all persons to be made parties to an action who will be necessarily and materially affected by its result, and to forbid the court from determining any controversy between the parties before it when it cannot be done without prejudice to the rights of others, or by saving their rights. In such cases it is the duty of the court to allow such persons to be made parties, to the end that they may protect their interests.'' *Smith* v. *Moore,* 49 Ark. 100, 4 S. W. 282.

The decree authorizing McWilliams to cancel the lease contains a provision that it shall not affect the rights, if any, of the non-participating royalty owners . . . ''in the [*west* forty'']. Unfortunately cancellation of itself affected the holders of these interests, for the decree cleared the way for the landowner to contract anew. This later lease may or it may not be advantageous to the old royalty grantees; but the fact remains that their rights to oil and gas taken from property under a lease existing when the royalties were conveyed were destroyed as to *that* lease, and this was done while they were legally absent. This does not mean that, as to non-participating royalty owners, they would have to be consulted in circumstances where a new lease could be legally negotiated.

It is conceivable (though not suggested in this case) that collusive action between lessor and lessee could so adversely affect royalty grantees as to destroy or impair their property rights.

Our conclusion is that adjudication without giving the absent interests an opportunity to be heard was improper, hence the decree must be reversed. The cause is remanded for a new trial.

Mr. Justice McFADDIN and Mr. Justice MILLWEE dissent.

ED. F. McFADDIN, Justice (Dissenting). The majority is holding that the owner of a *nonparticipating* royalty[1] is a *necessary* party in a suit to cancel an outstanding oil and gas lease; and I dissent from such holding.

In May, 1938, McWilliams and others, as owners of the surface and minerals, executed to Childers an oil and gas lease, which, by assignment, is now owned by the appellants, Hunt, *et al.* This was a regular 88 and 1/8th commercial oil and gas lease, in which the lessors were to receive 1/8th royalty of all oil, etc., produced. After the execution of the lease, McWilliams acquired the interest of the other landowners; and thereafter, McWilliams executed certain nonparticipating royalty deeds, hereinafter to be discussed; but he continued, at all times, to be the owner of the lands and the participating mineral rights.

In 1948, McWilliams, as plaintiff, brought this suit against Hunt, *et al.*, to cancel the lease, because there had been no development[2] on the 40 acres here involved. Hunt, *et al.*, claimed that all of the nonparticipating royalty holders should have been made parties to this suit; and the majority is holding that Hunt's contention was correct. There is no suggestion that McWilliams, in seeking to cancel the lease, is prompted by motives that would fraudulently affect the holders of the nonparticipating

---

[1] In 3 Arkansas Law Review 190, there is an article entitled "Arkansas Form of Royalty Deed for Oil and Gas Conveyances"; and in speaking of "a nonparticipating royalty interest" the writer says, "By which is meant only the right to share in the royalty to be delivered by lessee under a present or future lease, . . ."

[2] See *Poindexter* v. *Lion Oil Co.*, 205 Ark. 978, 167 S. W. 2d 492; *Ezzell* v. *Oil Associates*, 180 Ark. 802, 22 S. W. 2d 1015; *Standard Oil Co.* v. *Giller*, 183 Ark. 776, 38 S. W. 2d 766; and *Drummond* v. *Alphin*, 176 Ark. 1052, 4. S. W. 2d 942.

royalty.[3] The only point decided by the majority is that a nonparticipating royalty holder (holding under an instrument now to be copied) is a necessary party to this suit; and that is the point on which I dissent.

Essential to an understanding of this case—and, from my point of view, determinative of the issues—is the exact wording of the nonparticipating royalty deed here involved. I copy the pertinent provisions: McWilliams conveyed to one grantee ''An Undivided 5/113 interest in and to all of the oil, gas and other minerals, in, under and upon the following described lands.'' Then follows the description of the 80 acres. Immediately after the description, the deed contains the language which makes it a *nonparticipating* royalty deed and which reads as follows:

''The grantor herein expressly reserves to himself, his heirs or assigns, the exclusive right to lease said lands, or any part thereof, for oil and gas purposes, without interference or hindrance upon the part of the grantee, her heirs or assigns; and the grantee herein, her heirs or assigns, shall never be entitled to receive any part of the consideration, cash or otherwise, paid or to be paid, for any oil and gas mining lease heretofore or hereafter executed covering said land, or any part thereof, nor shall the grantee, her heirs or assigns, ever be entitled to receive any part of any delay rentals to defer the commencement of drilling operations provided by any such lease; and the grantee herein, her heirs or assigns, shall not be required to join in the execution and delivery of any oil and gas mining lease covering said land, or any part thereof, in order to convey good title to lessee thereunder, PROVIDED, that the grantor herein expressly covenants with the grantee that no oil and gas mining lease shall ever be executed covering the above land, or any part thereof, that shall reserve to the grantor herein, his heirs and assigns, as royalty, less than one-eighth of all of the oil and gas produced and saved from

[3] In the majority opinion there is the statement, "We assume—and the assumption presupposes that none of the parties here are actuated by ulterior motives—that in seeking cancellation, the landowner did not intend to serve his own interest to the detriment of royalty holders."

said land and this covenant shall be deemed a covenant running with the land.

"It is the intention of the parties hereto that the grantee herein, her heirs, or assigns, shall be entitled to receive hereunder 5/113 of all oil and/or gas run to the credit of the royalty interest reserved under and by virtue of any oil and gas mining lease now in force and effect covering said land, and under any oil and gas mining lease hereafter executed covering said land, or any part thereof; and in any event the grantee herein, her heirs or assigns, shall be deemed the owner of and shall be entitled to receive 5/904 part of all oil and gas produced and saved from said land, or any part thereof."

Except as to the interest conveyed, each of the other nonparticipating royalty deeds executed by McWilliams contains language identical to that copied above; and I maintain that the plain language of the nonparticipating royalty deed makes the majority holding indefensible. I point out:

(1)—Clearly, the parties to the nonparticipating royalty deed intended that McWilliams should have the unrestricted right to again lease the land for the production of oil and gas after the termination of the existing lease. If Hunt had voluntarily released the oil and gas lease on the west 40 acres, McWilliams could have executed a new lease without consulting the nonparticipating royalty holder. Why, then, is it necessary for McWilliams to bring in these nonparticipating royalty holders in his suit to obtain a cancellation from Hunt, when if Hunt had voluntarily surrendered, McWilliams could have leased without consulting the nonparticipating royalty holders?

(2) At the time the nonparticipating royalty deeds were executed in this case, it was well known to all informed persons that *a portion* of an oil and gas lease covering lands in Arkansas could be forfeited for nondevelopment.[4] Such forfeiture is not self-executing but must be effected by a decree in Chancery. If a part of an entire tract could be forfeited for nondevelopment of

---

[4] See cases cited in Footnote No. 2, *supra.*

such part, then by no process of reasoning can I see why one royalty holder cannot declare his part free of a lease without being required to bring in all of the other royalty holders.

(3)—I submit that if the holder of a nonparticipating royalty deed is a necessary party to a suit to cancel a pre-existing lease—as the majority holds—then the same reasoning carried to its logical conclusion would mean that the holder of a nonparticipating royalty deed is an essential party to sign a new oil and gas lease on the premises. I don't believe the majority of the Court will ever go that far. It would certainly be revolutionary in the oil business for a person holding such an instrument as the one here copied to have to be consulted about the execution of a lease, when the very instrument under which he claims, says that he has no right to be consulted.

The majority opinion cites five cases but only one of these is a case involving a nonparticipating royalty deed. That case is *Calcote* v. *Texas Pacific Coal and Oil Co.*, 157 Fed. 2d 216, 167 A. L. R. 413, and is an opinion from the Circuit Court of Appeals of the Fifth Circuit. The full text of the nonparticipating royalty deed there involved is not contained in the opinion. But at all events, the zealousness, with which Federal Courts watch the matter of *diversity of citizenship* and *indispensable parties,* is well known; and that opinion from a Federal Court in another Circuit should not be seized upon as sufficient justification to change the contractural rights between parties as stated in the instrument under which they claim. A recent case not cited by the majority, and apparently opposed to the Calcote case, is that of *Superior Oil Co.* v. *Stanolind Oil Co.*, 230 S. W. 2d 346. It was decided by the Eastland Texas Court of Civil Appeals, and a writ of error was granted by the Supreme Court of Texas on January 10, 1951 (148 Texas 648).

The crux of the whole question in the case at bar is whether the rights of the grantor and grantee in a *nonparticipating* royalty deed are to be determined by the clear language of the said instrument.