SLIP OPINION

# SUPREME COURT OF ARKANSAS

No. CV-15-198

SEECO, INC., DESOTO GATHERING
COMPANY, LLC, AND
SOUTHWESTERN MIDSTREAM
SERVICES COMPANY

APPELLANTS

V.

SARA STEWMON ET AL.

APPELLEES

Opinion Delivered December 8, 2016

APPEAL FROM THE ST. FRANCIS
COUNTY CIRCUIT COURT
[NO. 46CV-14-192-2]

HONORABLE L.T. SIMES II, JUDGE

AFFIRMED.

---

**JOSEPHINE LINKER HART, Associate Justice**

This is a class-action case. Appellants SEECO, Inc., DeSoto Gathering Company, LLC,
and Southwestern Midstream Services Company (collectively SEECO), are subsidiaries of
Southwestern Energy Company. In this interlocutory appeal, SEECO challenges an order of
the St. Francis County Circuit Court granting class certification to a group of landowners who
entered into natural-gas leases with SEECO. SEECO also challenges whether Mrs. Stephanie
DeVazier is a proper substitute class representative. After the circuit court had certified the
class, SEECO filed an appeal to this court and completed briefing, but before submission of
the case, Mrs. Stewmon passed away. This court entered, on appellee's motion, an order for
substitution of a new qualified class representative. Before the substitution was made, Circuit
Judge L.T. Simes passed away. Judge Kathleen Bell was assigned as Judge Simes's replacement.

SLIP OPINION

On March 22, 2016, Judge Bell entered an order finding that DeVazier was a qualified class representative and approved her as a substitute for Stewmon.

SEECO timely filed a supplemental notice of appeal and presented an additional 27 pages of argument, some of which duplicates what was presented in the original brief. When appropriate, we will combine the redundant arguments in our discussion.

In the original appeal, SEECO argues: (1) the prior filing of *Snow*[1] precludes this case from going forward; (2) the class definition erroneously requires a determination of the merits to identify class members; (3) appellee did not introduce evidence to prove the Rule 23 requirements for class certification; and (4) the redundant class certification violates appellants' federal and state constitutional rights to due process. For its "supplemental" argument, SEECO argues: (A) Mrs. DeVazier has not properly joined this suit and must be dismissed. (B) Even if Mrs. DeVazier were permitted to enter the case, she is not a proper class representative under Rule 23. (C) The circuit court lacked jurisdiction to hear Mrs. DeVazier's claims because they are already being litigated in the June Merrell lawsuit and in the concurrently pending *Snow* class action. (D) When class certification is pending on appeal and the class representatives dies, the certification must be vacated as moot.

At issue is a provision in more than 16,000 of SEECO's standard gas leases that allows SEECO to deduct from royalty payments reasonable expenses incurred in gathering,

---

[1] *SEECO, Inc. v. Snow*, 2016 Ark. 444 (CV-15-197). Like the case at bar, *Snow* is a class-action case certified in Conway County that addresses essentially the same issues raised by the class in the instant case.

compression, treatment, and marketing the natural gas that is extracted from the wells. The

St. Francis County Circuit Court defined the class as

> [a]ll residents of the State of Arkansas who entered into leases with Defendant SEECO
> (up through September 27, 2013) for the development and operation of natural gas
> wells on property located in the State of Arkansas and who signed leases allowing for
> deduction of reasonable costs for gathering, compression, treatment and marketing.
> Specifically excluded are any leases which have non-Arkansas residents as parties to the
> lease.

(Hereinafter, "the class.")

SEECO, Inc. is an energy company engaged in the exploitation of natural-gas deposits

found in the geological region of Arkansas known as the "Fayetteville Shale."[2] SEECO secures

gas leases and drills the gas wells. DeSoto Gathering Company, LLC, and Southwestern

Midstream Services Company engage in gathering, compression, treatment, and marketing

natural gas. The appellees/lessors' complaint, filed September 27, 2013, alleges that the

relationship between the aforementioned SEECO defendants allowed SEECO to manipulate

the costs associated with bringing the natural gas to market through upcharging for services

provided by the subsidiary companies[3] and by allowing the subsidiary companies to use natural

---

[2] The Fayetteville Shale is a geographic region in Arkansas that runs in a band just north of Little Rock from Sebastian and Washington Counties to Phillips County. According to the US Energy Information Administration, the Fayetteville Shale is estimated to cover 5,853 square miles, 60 to 575 feet thick, at a depth of 1450–6700 feet. It holds 13,240 billion cubic feet of unproved, technically recoverable gas. The average well was estimated to produce 1.3 billion cubic feet of gas.

[3] At the certification hearing, the class attorney asserted that through discovery he learned that processing the gas cost SEECO twenty-seven cents per thousand cubic feet, and SEECO deducted from royalty payments almost sixty cents per thousand cubic feet.

gas without authorization or compensation to the owners. As a result, SEECO deducted "fraudulent" and "unfair" expenses from the lessors' royalties. It asserted causes of action for breach of contract; unjust enrichment; breach of the "Prudent Operator Standard," a statutory duty of good faith to accurately pay royalties in accordance with Arkansas Code Annotated section 15-73-207, including treble damages and attorney fees for underpayment of royalties; deceptive trade practices; and fraud.

The lessors' dissatisfaction with SEECO's deductions from their royalty payments has, to date, spawned two other class-action lawsuits. On May 7, 2010, Eldridge Snow became lead plaintiff in a similar lawsuit filed in Conway County. On October 14, 2014, the Conway County Circuit Court entered an order that certified the proposed class in *Snow*.[4] *SEECO, Inc.*

---

[4] All non-excluded persons or entities who are citizens of the State of Arkansas as of the commencement date of this civil action (that is, the date of filing of the original Complaint) and who are, or were, royalty owners in wells producing natural gas from the Fayetteville Shale where SEECO, Inc. is or was the operator and/or working interest owner/lessee under oil and gas leases that provide for the payment of royalty as follows:

(a) "Lessee shall pay Lessor [stated fraction or %] of the proceeds derived from the sale of all gas (including substances contained in such gas) produced, saved and sold by Lessee. Proceeds are defined as the actual amount received by the Lessee for the sale of said gas. In calculating the proceeds derived from the sale of gas produced, saved and sold by Lessee, Lessee shall be entitled to deduct all reasonable gathering, transportation, treatment, compression, processing and marketing costs that are incurred by Lessee in connection with the sale of such gas" and

(b) "Lessee shall have the right to use, free of cost, gas, oil and water found on said land for its operations, except water from the wells of the "lessor,"

from and after January 1, 2006, and where DeSoto Gathering Company, LLC and Southwestern Energy Services, Inc. are gathering and purchasing the natural gas, respectively. The Class Claims relate only to the proper payment of royalty arising from SEECO, Inc's sales of natural gas to these affiliated entities and produced from

*v. Snow*, 2016 Ark. ___ (CV-15-197) is also on appeal and is a companion case to the case-at-bar. A third class-action, *Smith v. SEECO*, was certified in federal court.

At the certification hearing in the instant case, the St. Francis Circuit Court had before it the complaint, Stewmon's copy of the SEECO form gas lease, the Dedicated Field Services Agreement entered into between SEECO and DeSoto Gathering Company that sets the rates for gathering charges on gas SEECO produces in the Fayetteville Shale, which does not make any special provisions for a particular gas well; SEECO's admission that over 10,000 leases

---

the wells completed in the Fayetteville Shale and located in the State of Arkansas. The Class does not include overriding royalty owners or other owners who derive their interest through the oil and gas lessee. The Class is limited to natural gas production from the Fayetteville Shale.

The Class Claims shall not include royalty owners' claims in those wells and during those periods where SEECO, Inc. did not, through itself or DeSoto Gathering Company, LLC and Southwestern Energy Services, Inc., gather, market and sell natural gas.

The persons or entities excluded from the Class are (a) all governmental entities, including federal, state and local governments and their respective agencies, departments, or instrumentalities, (b) the States and territories of the United States or any foreign citizens, states, territories or entities; (c) the United States of America, (d) publicly traded entities and their respective parents, affiliates, and related entities, including SEECO, Inc., DeSoto Gathering Company, LLC and Southwestern Energy Services, Inc.; (e) owners of any interests and/or leases located on or within any unit operations of an entire pool created under A.C.A. § 15-72-308 et seq. and any federally created units, including the Ozark Highlands Unit, (f) owners of any non operating working interest for which SEECO, Inc., or its agents or representatives, as operator, disburses royalty, and (g) any persons or entities that Plaintiff's counsel is, or may be, prohibited from representing under the Arkansas Rules of Professional Conduct, including SEECO's counsel, their firms, and member's of their firms (the "Class" or "Class Members").

SLIP OPINION

contain similar language to the deduction clause in the Stewmon lease; SEECO employee Stephen Guidry's deposition in which he testified that 66.2% of the 16,760 or 11,095 leases with SEECO are

implicated by the class definition proposed by Stewmon. It also had copies of check stubs memorializing the deductions to Stewmon's royalties. Also submitted was a deposition from Stewmon and the entire record from the Snow case, which contained copies of additional SEECO gas leases. Based on the information that the circuit court had before it, it certified the class.

On appeal, SEECO first argues that the prior filing of *Snow* precludes this case from going forward. It contends that this court prohibits co-equal lower courts from competing with each other over the same action and the same parties under an exclusive-jurisdiction rule that provides either for dismissal on appeal or an extraordinary writ. Citing *Foster v. Hill*, 372 Ark. 263, 275 S.W.3d 151 (2008), and *Edwards v. Nelson*, 372 Ark. 300, 275 S.W.3d 158 (2008), SEECO asserts that both class-action lawsuits are barred by the "doctrine of concurrent jurisdiction." According to SEECO, this doctrine is based on comity and the necessity of avoiding conflict in the execution of judgments by independent courts. SEECO notes that the class descriptions in *Snow* and in the instant case include "the same class of Arkansans who have leases with SEECO providing for deduction of reasonable costs for gathering, treatment, and marketing" the extracted natural gas. SEECO argues further that there is no meaningful distinction between the terms "resident" and "citizen." It contends that eliminating competing lawsuits is necessary to preclude "interference" from the other lawsuit, which it

contends has already occurred, with Snow attempting to intervene in the case-at-bar.

As an alternative position, SEECO urges this court to use its superintending authority over the inferior courts of this state to "end the feud" between the parties in the competing lawsuits. It asserts that "this class action chaos cannot continue."

Stewmon asserts that at this stage of the proceedings, an interlocutory appeal of the class certification, the issue of whether competing class-action lawsuits should be allowed is outside the scope of what SEECO designated for appeal. Stewmon argues that this issue was raised and rejected by the circuit court in a motion for summary judgment, which is not appealable in this case. We find merit in Stewmon's argument.

In pertinent part, Rule 2(a) of the Arkansas Rules of Appellate Procedure–Civil provides,

> (a) An appeal may be taken from a circuit court to the Arkansas Supreme Court from:
>
> 1. A final judgment or decree entered by the circuit court; (or)
>
> . . .
>
> 9. An order granting or denying a motion to certify a case as a class action in accordance with Rule 23 of the Arkansas Rules of Civil Procedure.

Certainly SEECO's argument is outside the scope of the class certification. This court has made it clear that it will not entertain other issues in an interlocutory appeal pursuant to Rule 2(a)(9) under the guise of a challenge to class certification. *Lenders Title Co. v. Chandler*, 353 Ark. 339, 107 S.W.3d 157 (2003). Furthermore, in *United American Ins. Co. v. Smith*, 2010 Ark. 468, 371 S.W.3d 685, this court stated that in an interlocutory appeal from a class-

certification order, a party could not acquire impermissible interlocutory review of the denial of a summary-judgment motion.

We are also unpersuaded by SEECO's contention that the "concurrent-jurisdiction doctrine" bars competing class-action lawsuits. In our view, there is no such "doctrine." Rather, it is a legal response to the situation in which there are two actions between the same parties on the same subject that test the same rights. In *Askew v. Murdock Acceptance Corp.*, 225 Ark. 68, 279 S.W.2d 557 (1955), a case that predated the Arkansas Rules of Civil Procedure, there was merely a situation that would today fall under Rule 12(b)(8). Rule 12(b)(8) provides for the dismissal of a case if a party asserts that there is the "pendency of another action between the same parties arising out of the same transaction or occurrence." However, in the instant case, because the Stewmon and Snow lawsuits have different lead plaintiffs and different participants—there can be only one recovery per aggrieved party—the parties are not the same. Accordingly, the factual predicate to assert a 12(b)(8) defense is simply not present.

SEECO next argues that the class definition erroneously requires a determination of the merits to identify class members. It urges us to find analogous *Southwestern Bell Yellow Pages, Inc. v. Pipkin Enterprises, Inc.*, 359 Ark. 402, 198 S.W.3d 115 (2004), where this court reversed a certification order that defined a class as: "[a]ll Arkansas customers of Defendants who paid or were charged usurious interest charges since November 15, 1997." The court agreed that the class definition was "invalid on its face" because it "depends on a determination of the ultimate question, i.e., whether Yellow Page's [Southwestern Bell's] charges were usurious."

This court reviews class certification under an abuse-of-discretion standard. *Id*. An

abuse of discretion means discretion exercised improvidently, thoughtlessly and without due consideration. *Id*. A class must be susceptible to precise definition. *Id*. Before a class may be certified under Rule 23, the class description must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class, and the identity of the class members must be ascertainable by reference to objective criteria. *Id*.

SEECO's reliance on *Pipkin Enterprises, Inc.* is misplaced. Whereas the *Pipkin* class description required a determination of the ultimate issue, the class in *Stewmon* is defined simply by residency and whether the class members signed a gas lease with SEECO that contained a specific clause. The ultimate issue, whether SEECO deducted money from royalty checks in excess of "reasonable costs for gathering, compression, treatment and marketing" is reserved for the finder of fact.

Finally, we decline SEECO's invitation to exercise our superintending control to manage these competing lawsuits. While amendment 80 to the Arkansas Constitution gives this court broad superintending control over the courts of this state, we have to this point primarily employed this power to exercise administrative control over the inferior courts. We do not believe it is necessary for us to take a more active role in this case.

For its third point on appeal, SEECO argues that Stewmon did not introduce evidence to prove the Rule 23 requirements for class certification. It contends that the circuit court erroneously relied on "allegations and arguments" in support of its Rule 23 findings.

The record belies SEECO's argument. As previously noted the circuit court had before

it a considerable quantity of evidence and other documentation to justify its findings. In making this argument, SEECO misapprehends the role of the circuit court in certifying a class action. Unlike the federal courts, which require a "rigorous analysis," Arkansas courts are much more liberal in allowing certification. *See* 2 David Newbern et al., *Civil Practice and Procedure* § 8:1 (4th ed.). In *Chandler, supra,* this court stated that the circuit court is obligated to "undertake enough of an analysis to enable us to conduct a meaningful review of the certification issue on appeal. At a minimum, this requires more than a cursory mention of the six criteria or bare conclusions that those criteria have been satisfied. The trial court cannot simply rubber stamp the complaint." 353 Ark. at 349, 107 S.W.3d at 162. Class certification is governed by Rule 23 of the Arkansas Rules of Civil Procedure, which states in part:

> (a) Prerequisites to Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties and their counsel will fairly and adequately protect the interests of the class.

> (b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. At an early practicable time after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. For purposes of this subdivision, "practicable" means reasonably capable of being accomplished. An order under this section may be altered or amended at any time before the court enters final judgment. An order certifying a class action must define the class and the class claims, issues, or defenses.

As appellees note, in *United American Insurance Co. v. Smith*, 2010 Ark. 468, 371 S.W.3d

685, this court has allowed a circuit court to consider anything in the record to determine whether to certify a class, including deposition testimony, documents and "even emails." We hold that in determining the nature of the cause of action, the circuit court had sufficient means before it to make a sufficient inquiry into the required factors to justify its decision on certification.

SEECO, however, does not merely argue that the proof submitted in support of the certification is incompetent. It argues further that the proof offered was also inadequate. SEECO challenges each of the elements that Rule 23 requires for certification of a class: ascertainability, numerosity, typicality, adequacy, commonality and predominance and superiority. We address each in turn.

a. No Evidence of Ascertainability.

Citing *Ferguson v. Kroger Co.*, 343 Ark. 627, 631, 37 S.W.3d 590, 593 (2001), SEECO asserts that ascertainability requires that "the class description must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class" and that "the identity of the class members must be ascertainable by reference to objective criteria." It argues that while the affidavit relied on by Stewmon "identifies whether a lessor has a mailing address inside or outside Arkansas, it says nothing about whether a lessor actually resides at that address, or at a place inside or outside of Arkansas."

SEECO seems to confuse the issue of whether a circuit court can determine by objective criteria whether a person is or is not a member of the class with whether the proposed class

description is underinclusive or overinclusive. The class description requires only that of its members that they be residents of Arkansas and that they have signed a gas lease with SEECO prior to September 27, 2013. These two facts are easily proved by proof of residence and a copy of the gas lease. Both constitute objective criteria.

b. No Evidence of Numerosity.

SEECO argues that Rule 23 requires "that the class is so numerous that joinder of all members is impracticable." *BPS Inc. v. Richardson*, 341 Ark. 834, 842, 20 S.W.3d 403, 406 (2000) (quotation and citation omitted). However, it asserts that Stewmon introduced only one lease into evidence, her own, and then erroneously relied on the Guidry affidavit, which states that "[t]here are 16,760 oil and gas leases with SEECO in Arkansas" and that 5,662 of those leases have one or more lessors with current addresses outside of Arkansas, so they are not in the certified class. SEECO contends that it was improper for her to infer from the affidavit that the class met the numerosity requirement, because she overlooks the fact that the affidavit does not address whether the leases contain the same deductions for gathering, compression, treatment and marketing costs, which is left to speculation. SEECO argues that the trial court erroneously found that "[a]ll members have leases which allow for the deduction of gathering, compression, treatment and marketing costs which are the subject of the Class Action Complaint." This argument fails to persuade.

We have previously indicated, the Guidry affidavit was properly before the circuit court, and the circuit court did not err in relying on it to certify the class. Additionally, the circuit court had before it the Dedicated Field Services Agreement entered into between SEECO and

DeSoto Gathering Company that sets the rates for gathering charges on all gas that SEECO extracted in the Fayetteville Shale. In *BPS Inc. v. Richardson*, 341 Ark. 834, 842, 20 S.W.3d 403, 406 (2000), this court stated,

> [w]e held that the exact size of the proposed class and the identity of the class members need not be established for the court to certify a class, and the numerosity requirement may be supported by common sense. We have not adopted a bright-line rule to determine how many class members are required to satisfy the numerosity requirement.

It is therefore not improper for the circuit court to infer that, out of approximately 10,000 gas leases held by Arkansas residents and a uniform policy of upcharging the gas-lease lessor, a potential class of at least several thousand members would emerge.

c. No Evidence of Typicality.

SEECO asserts that Rule 23(a) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." However, it argues that it presented unrebutted evidence that Ms. Stewmon is "subject to unique defenses that threaten to become the focus of the litigation."

Because Stewmon has died and been substituted as class representative, and because SEECO makes an equivalent argument with regard to DeVazier in its supplemental point B, we decline to further address this argument because it is moot.

d. No Evidence of Adequacy.

Because this argument was directed toward Stewmon, and she is no longer the class representative, argument under this rubric is moot. However, we are mindful that this point is essentially revived with regard to DeVazier in supplemental point C, so we will defer our

discussion.

e. No Evidence of Commonality and Predominance.

SEECO next argues that Ms. Stewmon failed to present any evidence of commonality and predominance. Instead, she erroneously presumed that she could rely on another lawsuit decided almost 20 years ago, *SEECO v. Hales*, 330 Ark. 402, 954 S.W.2d 234 (1997). This reliance was misplaced, SEECO argues, because commonality and predominance are "case specific." It asserts that Stewmon never attempted to offer any evidence on commonality and predominance, and the only SEECO lease she offered was her own. SEECO contends that commonality requires questions on which the case turns and are common to each class member.

The commonality element under Rule 23(a)(2) of the Arkansas Rules of Civil Procedure requires a determination by the trial court that "there are questions of law or fact common to the class." *BPS, Inc.*, 341 Ark. at 841, 20 S.W.3d at 405. Commonality requires that the defendant has engaged in some course of conduct that affects a group of persons and gives rise to a cause of action in which one or more of the elements of that cause of action will be common to all of the persons affected. *Id.* Here the commonality is established by the alleged inside dealing among the Southwestern Energy subsidiaries. Contrary to SEECO's representations, the record is sufficient for the circuit court to find that the complained of activity was experienced by the class members. As with the other elements, proof of commonality could be gleaned from multiple sources, including the Dedicated Field Services Agreement, not just Stewmon's absent oral testimony.

SEECO also challenges Stewmon's proof of predominance. As with the commonality

14

argument, it asserts that she relied entirely, and erroneously, on *Hales*, *supra*, a 20-year-old lawsuit about other issues. It notes that she called no witnesses and that argument of counsel was not evidence. This argument is not persuasive.

In *Kersten v. State Farm Mutual Automobile Insurance Co.*, 2013 Ark. 124, 426 S.W.3d 455, this court stated that the predominance requirement is whether a common wrong has been alleged against the defendant. Stewmon's complaint certainly describes a common wrong suffered by all the lessors who signed the standard gas lease.

f. Multiple Class Actions Destroy Superiority.

Finally, under this section, SEECO argues that Rule 23(b) requires "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." It asserts that superiority exists when representative litigation promotes judicial efficiency and is fair to both sides and that the avoidance of multiple suits lies at the heart of any class-action decision. However, it contends that the in-fighting between the Snow and Stewmon lawsuits, which resulted in the invocation of judicial process to enjoin each other's case, put the lie to any claim of superiority. Further, SEECO asserts that Ms. Stewmon did not offer any evidence to support superiority, and the record overwhelmingly defeats superiority because (1) SEECO is subject to multiple cases involving the same class and claims, (2) SEECO is subject to the risk of inconsistent rulings and judgments in two state courts and a federal court, (3) judicial efficiency is destroyed by multiple proceedings, and (4) there is nothing fair to SEECO (or absent class members) in either the warring state-court cases or the split of SEECO's lessors between federal and state forums. It argues that this destroys superiority because "there exists

the possibility of a multiplicity of suits across the state with the potential that circuit courts may reach inconsistent results. We disagree.

In spite of the fact that there are three class actions, they represent a substantial amount of judicial economy when there are over 16,000 gas leases potentially involved. We note further that, although it is couched in terms of challenging an element required for class certification, it is really attempting to have this court address, yet again, the propriety of multiple class actions filed against SEECO. As we stated in SEECO's first point, we will not entertain other issues in an interlocutory appeal pursuant to Rule 2(a)(9), under the guise of a challenge to class certification. *Lenders Title Co. v. Chandler, supra.*

For its fourth point, SEECO argues that the redundant class certification violates its federal and state constitutional rights to due process. It asserts that the "astounding deviations from fair, orderly, and traditional rules of practice" in this case violate SEECO's state and federal constitutional rights to due process of law. Specifically, it contends that the mere pendency of this action is forbidden by the previously filed Snow lawsuit and defeats any notion of superiority, finality, and fairness to SEECO. Further, Judge Simes should have shut it down immediately. In addition, it argues that the circumstances of this case deprive SEECO of any meaningful opportunity to be heard on the reasonableness of costs for gathering, treatment and marketing based on actual costs of service to each well and on whether the SEECO lessor is barred by the notice-of-breach clause. We decline to discuss the merits of this point for several reasons.

First, this argument is outside the scope of what is permitted for this interlocutory

appeal. *Lenders Title Co. v. Chandler, supra.* As with SEECO's first point, the argument exceeds the bounds prescribed by Rule 2(a)(9) of the Arkansas Rules of Appellate Procedure–Civil. Second, it is not the function of this court to police everyday aspects of trial practice via interlocutory appeal; Rule 23(d) gives the circuit court broad authority to make appropriate orders affecting fairness and the "fair conduct of the action." Finally, in oral argument, SEECO confirmed our observation that it did not secure a ruling in any circuit court regarding the activity it now complains of on appeal. We will not address arguments that are not raised and ruled upon below. *Beverly Enters-Ark., Inc. v. Thomas*, 370 Ark. 310, 259 S.W.3d 445 (2007).

Next we consider SEECO's supplemental points. It first argues that DeVazier was not properly substituted as lead plaintiff. It asserts that Rule 25 of the Arkansas Rules of Civil Procedure was not complied with, and neither was Rule 24, if she was entering the lawsuit as an intervenor. This argument has no merit.

First, we do not address SEECO'S Rule 24 argument as it is not cognizable in this interlocutory appeal. Regarding SEECO's Rule 25 argument, as noted previously, after Stewmon's untimely demise, appellees filed a motion to substitute a class representative pursuant to Rule 25. Upon consideration of the motion, we entered the following order:

> APPELLEE'S EMERGENCY MOTION TO TEMPORARILY REMAND FOR SUBSTITUTION OF A DECEASED PARTY IS GRANTED FOR THE PURPOSE OF SUBSTITUTING A NEW QUALIFIED CLASS REPRESENTATIVE.

> SEECO's contention that Rule 25 of the Arkansas Rules of Civil Procedure were not

followed is of no moment. This was a situation where no procedure was specified under our rules. Accordingly, our order purposely did not limit the circuit court to make a substitution in accordance with Rule 25. We, and the circuit court pursuant to our mandate, acted in a manner authorized by Rule 81(c) of the Arkansas Rules of Civil Procedure, which provides, "When no procedure is specifically prescribed by these rules, the court shall proceed in any lawful manner not inconsistent with the Constitution of this State, these rules or any applicable statute." We hold that there is no error here.

SEECO next argues that Mrs. DeVazier is not a proper class representative and that class counsel is not adequate. It first contends that the appellees failed to present competent proof because it submitted no live testimony. As we previously opined in this opinion, affidavits may supply sufficient proof of required elements in class certification when viewed in conjunction to pleadings and other materials before the circuit court. It is the totality of all the evidence before the circuit court that forms the basis of the circuit court's order. Thus we cannot say that the circuit court abused its discretion.

SEECO further argues that DeVazier is not an adequate class representative because she is a member of other classes, *Smith* and *Snow* and has her own lawsuit pending.[5] We, however, do not believe that this is a conflict that might disqualify her. Currently, she is a member of the class that has been certified by the circuit court. Moreover, DeVazier has promised via her affidavit that she would dismiss her other lawsuit and that she was "willing to pursue this suit

---

[5] DeVazier is suing SEECO along with another individual, June Merrell. Hereinafter, this will be referred to as the June Merrell lawsuit.

on behalf of all class members, and will in every respect act to protect the class, and act in the best interests of the class as a whole." This promise had to be credited by the circuit court in finding that she was an adequate class representative. We cannot conclude that in so doing, the circuit court clearly erred.

Arguing further, SEECO asserts that DeVazier would be unable to serve as class representative because she will be unable to dismiss her pending lawsuit because it would constitute a second dismissal under Rule 41(a) of the Arkansas Rules of Civil Procedure.[6] However, in this interlocutory appeal, whatever problem that Rule 41(a) may or may not present to DeVazier is outside the scope of what we may consider on appeal. The circuit court found that she was a proper class representative under the Rule 23 criteria, and that is what we must consider. We are mindful that broader issues exist within this lawsuit and that additional issues may develop in the future. However, in this interlocutory appeal we are limited to the issues directly related to class certification. We may not address the broader issues that SEECO keeps seeking to argue.

SEECO also contends that DeVazier has defenses unique to her situation that will make her atypical of other members of the class. We find these arguments unpersuasive.

A class representative satisfies the Rule 23 requirement of typicality if the claims and defenses are representative of the class. *The Money Place, LLC v. Barnes*, 349 Ark. 518, 78 S.W.3d 730 (2002). Here DeVazier's claim, like that of the putative class, emerged from

---

[6] We note that, in oral argument, SEECO stated that this lawsuit was dismissed prior to being served.

SEECO's previously mentioned upcharging practice. The practice arose from a provision in SEECO's standard lease that was entered into by every member of the putative class. It is true that the notice provision, which also appears in the standard lease, might arguably be asserted by SEECO. However, this defense does not overshadow the wrong complained of in the lawsuit. It is only when the unique defenses threaten to become the focus of the litigation that class certification is not appropriate. *BPS Inc. v. Richardson*, *supra*. Assuming, without deciding, that the notice provision is applicable to this litigation, it would not make DeVazier atypical as it is a defense common to every class member who signed the same standard lease that DeVazier signed. Further, in *Barnes*, *supra*, we held that even an arbitration agreement in the class representative's contract did not make her claims and defenses atypical from the other class members' usury complaints. We hold that the circuit court did not clearly err in finding that DeVazier satisfied the typicality requirement.

SEECO next asserts that because DeVazier has a "multiplicity" of "recycled" lawsuits against SEECO, plus unique claims and defenses, she is not "typical" of other members of the class and therefore cannot be class representative. Of particular concern is the notice provision in her lease that gave SEECO the opportunity to cure.[7] This argument is unpersuasive.

---

[7] The lease includes the following notice-of-breach clause:

11. In the event lessor considers that lessee is in breach of any of its obligations hereunder, lessor shall notify lessee in writing of the facts relied upon as constituting a breach hereof, and lessee, if in breach hereof, shall have sixty days after receipt of such notice in which to commence the compliance with the obligations imposed by virtue of this lease. Until such time as lessee has been given the above described written notice and opportunity to cure the asserted breach, lessee shall not be

Cite as 2016 Ark. 435

In *DIRECTV, Inc. v. Murray*, 2012 Ark. 366, 373, 423 S.W.3d 555, 564, this court stated that under Arkansas law, "The typicality requirement is satisfied if the class representative's claim arises from the same wrong allegedly committed against the members of the class." Accordingly, a representative's "claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if [the representative's] claims are based on the same legal theory." *Id*. Our focus in reviewing typicality is, therefore, the extent to which the lead plaintiff's claim is similar to the other potential class members, not how it is different. DeVazier is an Arkansas resident and her lease contains the provision that SEECO allegedly violated. We require no more in this case.

Finally, SEECO argues under this point that the remand raised additional issues concerning the adequacy of class counsel. It notes that the appellees considered Stewmon's personal representative and the spouse of class counsel before selecting DeVazier. SEECO faults the appellees for not selecting the "obvious" successor, Stewmon's surviving spouse. We reject this argument.

Class counsel is presumed to be adequate. *Diamante, LLC v. Dye*, 2013 Ark. 501, 430 S.W.3d 710. Given the unprecedented procedural issues raised by this case, we hold that SEECO has failed to overcome the presumption that class counsel is adequate.

SEECO next argues that the circuit court did not have jurisdiction because DeVazier's claims are being litigated in the June Merrell lawsuit and the *Snow* class action. It contends that

_____

considered in default under the terms of this lease.

21

this involvement is a matter of subject-matter jurisdiction which may be raised at any time. Citing *Tortorich v. Tortorich*, 324 Ark. 128, 923 S.W.2d 858 (1996), and *Foster v. Hill*, 372 Ark. 263, 267 S.W.3d 151 (2008), it again claims that pursuant to the "concurrent-jurisdiction doctrine" we are obligated to act. Furthermore, SEECO contends that claim preclusion bars splitting claims into distinct actions. This argument also fails for the same reasons we cited in rejecting SEECO's first point in its original brief. However, some additional discussion is warranted.

SEECO's reliance on *Tortorich* and *Foster* is misplaced. In the supplemental opinion on denial of rehearing in *Tortorich*, this court made it very clear that its decision was based on the fact that Saline County was the improper venue for a suit for absolute divorce when a suit for separate maintenance and divorce from bed and board was pending in Pulaski County. The case turned on statutory interpretation, not subject-matter jurisdiction being argued for the first time on appeal. Further, the *Tortorich* court made it clear that Rule 12(b)(8) provided a defense, not a rule of subject-matter jurisdiction.

SEECO's reliance on *Foster* is likewise misplaced. There, this court exercised its superintending authority, but only in regard to the administrative decision of whether a duly appointed special prosecutor acting in one division of a circuit court would conduct a murder investigation rather than the division that regularly handled criminal matters. *See Smith v. Simes*, 2013 Ark. 477, 430 S.W.3d 690 (granting a writ of certiorari where circuit judge exceeded his authority to disqualify an elected prosecutor and appoint a special prosecutor). Here, SEECO

has not made a proper application for an extraordinary writ. SEECO merely mentioned that it desired an extraordinary writ in its prayer for relief. This application does not comport with Arkansas Supreme Court Rule 6-1.

Finally, SEECO argues that when Stewmon died, the class-certification order should have been dismissed. We hold that this issue is outside the scope of the interlocutory appeal that we have before us. In this appeal, our role is to determine whether the circuit court abused its discretion in certifying the class that we have before us. We have already determined that the circuit court did not err in finding that DeVazier was a suitable class representative. Nothing more is required in this appeal. Furthermore, when Stewmon died, we remanded this case to the circuit court to allow for a proper substitution. Nothing argued by SEECO suggests to us that this court lacked the authority to make such an order.

Affirmed.

Special Justices BOB ESTES, SCOTT P. RICHARDSON, and M. SCOTT WILLHITE, join.

BRILL, C.J., and WOOD, J., concur.

DANIELSON, BAKER, and GOODSON, JJ., not participating.

**RHONDA K. WOOD, Justice, concurring.** I concur for the same reasons set out in *SEECO, Inc. v. Snow*, 2016 Ark. 444. In addition, I agree with the majority's conclusion that this case is an interlocutory appeal of a class-action certification and, accordingly, our review is limited to that issue. Therefore, I do not join the majority's discussions, which are arguably dicta, regarding the existence and application of concurrent jurisdiction and the court's superintending authority. The proper mechanism for the appellant to raise these arguments is

through a writ of certiorari or writ of prohibition. Although appellants mentioned a writ in their prayer for relief, it has not been sufficiently raised for this court to consider it as part of their interlocutory appeal.

BRILL, C.J., joins.

*Kutak Rock LLP*, by: *Jess Askew III* and *Luke Burton*, for appellants.

*Easley & Houseal PLLC*, by: *B. Michael Easley*, for appellees.