SLIP OPINION

Cite as 2016 Ark. 444

# SUPREME COURT OF ARKANSAS

**No.** CV-15-197

| | |
|---|---|
| SEECO, INC.<br><div align="right">APPELLANT</div><br>V.<br><br>ELDRIDGE SNOW ET AL.<br><div align="right">APPELLEES</div> | **Opinion Delivered:** December 8, 2016<br><br>APPEAL FROM THE CONWAY COUNTY CIRCUIT COURT [CV-2010-126]<br><br>HONORABLE TERRY SULLIVAN, JUDGE<br><br><u>AFFIRMED; MOTION TO STRIKE DENIED</u>. |

**ROBIN F. WYNNE, Associate Justice**

In this interlocutory appeal, SEECO, Inc.,[1] appeals from an order of the Conway County Circuit Court granting class certification pursuant to Rule 23 of the Arkansas Rules of Civil Procedure. The circuit court granted appellee Eldridge Snow's motion to represent a class of Arkansas citizens who entered into certain lease agreements with SEECO for the production of natural gas on their property in the Fayetteville Shale. These lease agreements allow SEECO to deduct "reasonable" costs of production from the royalty owners' payments, and that provision of the contract is at the heart of the class's claims. On appeal, SEECO challenges the circuit court's findings regarding the requirements for class certification, particularly focusing on the decision to limit the class to citizens of the State

---

[1] Although the record reflects that when SEECO, Inc., filed a certificate of formation as a for-profit corporation in the State of Texas in May 2014 it also changed its name to SWN Production (Arkansas), Inc., we will refer to the appellant as "SEECO" in this opinion.

of Arkansas; in addition, SEECO contends that the class certification violates its federal and state constitutional rights to due process. An order granting class certification is immediately appealable to this court under Rule 2(a)(9) of the Arkansas Rules of Appellate Procedure–Civil. We find no abuse of the circuit court's discretion and affirm.[2]

On May 7, 2010, Snow,[3] individually and as putative class representative on behalf of all similarly situated people, filed a complaint in the Conway County Circuit Court against SEECO, alleging that SEECO had underpaid royalties to plaintiffs. Snow filed a first amended complaint on November 3, 2010. As summarized by the circuit court, in the first amended complaint Snow asserts that SEECO has engaged in a fraudulent scheme to underpay and misrepresent the true value of gas production from Snow and the class members' wells and to deprive Snow and the class of a portion of their royalties through a policy of related schemes, resulting in substantial financial benefit to SEECO and, ultimately, SEECO's parent company, Southwestern Energy Company (SWN), at the royalty owners' expense. Snow and the class assert theories of recovery for breach of lease, SEECO's breach of the duty to act in good faith and as a reasonable prudent operator, conversion, deceit, actual and constructive fraud, unjust enrichment, accounting and constructive trust, and violation of Arkansas statutory law.[4] They allege that SEECO has engaged in a fraudulent

---

[2] This case was submitted as a companion case to *SEECO, Inc. v. Stewmon*, 2016 Ark. 435 (CV-15-198), also decided on this date.

[3] M.L. Tester was also a named plaintiff. His claims were later voluntarily dismissed without prejudice.

[4] In November 2013, consistent with Snow's lead counsel's statements at a hearing, the circuit court entered an order dismissing with prejudice all claims and alleged causes of action for alter ego, piercing the corporate veil, and the like that would attempt to impose liability on any entity other than the named defendant SEECO, Inc., namely Southwestern

scheme, design, plan, and pattern of unlawful activity and common course of conduct to misrepresent the true value of gas production and to deprive royalty owners of a portion of their royalties through a policy of related schemes, resulting in substantial financial benefit to SEECO at the royalty owners' expense.

Following extensive discovery, on September 19, 2013, Snow filed a motion for class certification, and on January 7, 2014, he filed a brief in support of class certification. SEECO filed a motion to strike plaintiff's belated motion for class certification on October 4, 2013; a response to plaintiff's belated motion for class certification on October 18, 2013; and a brief in opposition to plaintiff's motion for class certification on January 27, 2014.

In November 2013, the circuit court granted partial summary judgment to SEECO on the following three points: (1) SEECO is entitled to deduct from royalty payments the reasonable costs as outlined in the lease agreements (leaving open the issue of whether the costs deducted were unreasonable); (2) SEECO is entitled to use gas underlying Snow's property in the conduct of its operations in accordance with the lease; and (3) SEECO does not owe a fiduciary duty or obligation to Snow in accordance with Arkansas Code Annotated section 15-73-207 (Repl. 2009), which is titled "Prudent operator standard."

The circuit court held a class-certification hearing on February 12 and 13, 2014. At the hearing, both parties presented additional evidence through testimony and evidentiary exhibits, including expert witnesses. The court held a hearing on April 28, 2014,

---

Energy Company, DeSoto Gathering Company, LLC, or Southwestern Energy Services Company.

concerning the proposed findings of fact and conclusions of law. Following this hearing, Snow submitted proposed findings of fact and conclusions of law, to which SEECO objected; Snow filed a response to SEECO's objections.

On May 19, 2014, SEECO filed a notice of removal in the United States District Court for the Eastern District of Arkansas. SEECO alleged that the federal court had jurisdiction of this case under the Class Action Fairness Act of 2005, in that the putative class would include over 100 members, the amount in controversy is over $5 million, and minimal diversity existed. Regarding the required minimal diversity, SEECO stated that while at the time the complaint had been filed it was an Arkansas corporation, in May 2014 SEECO filed papers, and was approved, to become a Domestic For-Profit Corporation in the State of Texas with the name SWN Production (Arkansas), Inc. In addition, in Snow's Response to SEECO's Objections to Plaintiff's Proposed Findings of Fact and Conclusions of Law he proposed a class definition of "All non-excluded persons or entities who are citizens of the State of Arkansas as of the date of this Order" (rather than at the time the law suit was filed). On September 25, 2014, the federal district court remanded the case to the Conway County Circuit Court.

On October 14, 2014, the circuit court entered its findings of fact and conclusions of law and order granting plaintiff's motion for class certification. In its forty-page order, the court made extensive findings on the requirements for class certification. The court certified the following class:

> All non-excluded persons or entities who are citizens of the State of Arkansas as of the commencement date of this civil action (that is, the date of filing of the original

Complaint) and who are, or were, royalty owners in wells producing natural gas from the Fayetteville Shale where SEECO, Inc. is or was the operator and/or working interest owner/lessee under oil and gas leases that provide for the payment of royalty as follows:

a) "Lessee shall pay Lessor [stated fraction or %] of the proceeds derived from the sale of all gas including substances contained in such gas) produced, saved and sold by Lessee. Proceeds are defined as the actual amount received by the Lessee for the sale of said gas. In calculating the proceeds derived from the sale of gas produced, saved and sold by Lessee, Lessee shall be entitled to deduct all reasonable gathering, transportation, treatment, compression, processing and marketing costs that are incurred by Lessee in connection with the sale of such gas" and

b) "Lessee shall have the right to use, free of cost, gas, oil and water found on said land for its operations, except water from the wells of the lessor,"

from and after January 1, 2006, and where DeSoto Gathering Company, LLC and Southwestern Energy Services, Inc. are gathering and purchasing the natural gas, respectively. The Class Claims relate only to the proper payment of royalty arising from SEECO, Inc.'s sales of natural gas to these affiliated entities and produced from the wells completed in the Fayetteville Shale and located in the State of Arkansas. The Class does not include overriding royalty owners or other owners who derive their interest through the oil and gas lessee. The Class is limited to natural gas production from the Fayetteville Shale.

The Class Claims shall not include royalty owners' claims in those wells and during those periods where SEECO, Inc. did not, through itself or DeSoto Gathering Company, LLC and Southwestern Energy Services, Inc., gather, market and sell natural gas.

The class definition goes on to list persons or entities excluded from the class. The circuit court appointed Snow as class representative and his attorneys as class counsel. SEECO filed a notice of appeal on October 28, 2014.

Class certification of a lawsuit is governed by Rule 23 of the Arkansas Rules of Civil Procedure. Our law is well settled that the six requirements for class-action certification include (1) numerosity, (2) commonality, (3) typicality, (4) adequacy, (5) predominance,

SLIP OPINION

and (6) superiority. *Campbell v. Asbury Auto., Inc.*, 2011 Ark. 157, at 14, 381 S.W.3d 21, 33. In addition, there must be a defined class that will make it administratively feasible for a court to determine membership in the class; in other words, class identity must be feasible, and the class cannot be excessively broad or amorphous. *Arkansas Blue Cross & Blue Shield v. Hicks*, 349 Ark. 269, 281, 78 S.W.3d 58, 65 (2002) (citing *Ferguson v. Kroger Co.*, 343 Ark. 627, 37 S.W.3d 590 (2001)).

Circuit courts are given broad discretion in matters regarding class certification, and we will not reverse a circuit court's decision to grant or deny class certification absent an abuse of discretion. *GGNSC Arkadelphia, LLC v. Lamb*, 2015 Ark. 253, at 8, 465 S.W.3d 826, 831. When reviewing a circuit court's class-certification order, we review the evidence contained in the record to determine whether it supports the circuit court's decision. *Rosenow v. Alltel Corp.*, 2010 Ark. 26, at 5, 358 S.W.3d 879, 884. Neither this court nor the circuit court delves into the merits of the underlying claims at this stage, as the issue of whether to certify a class is not determined by whether the plaintiff has stated a cause of action for the proposed class that will prevail. *Id.* We thus view the propriety of a class action as a procedural question. *Teris, LLC v. Chandler*, 375 Ark. 70, 76, 289 S.W.3d 63, 68 (2008).

On appeal, SEECO argues the following points: (I) The erroneous partial class for citizens of Arkansas is an artifice with no logical relationship to the class or its interests, which renders Mr. Snow and his counsel unfit to represent SEECO's lessors; (II) Class counsel's choice to represent part of SEECO's lessors creates conflicts that make them

inadequate to represent any SEECO lessor; (III) The gerrymandered class definition fails the "ascertainability" requirement of Rule 23; (IV) The circuit court's order fails to define the "class claims" and to address the elements of each underlying cause of action as required by Rule 23(b); (V) Common questions do not predominate; (VI) Mr. Snow's claims are not typical of other Arkansas citizens; (VII) Representative litigation is not superior because Mr. Snow's gerrymandered class requires multiple suits; and (VIII) The partial, gerrymandered class violates SEECO's federal and state constitutional rights to due process. In sum, SEECO challenges all requirements for class certification save numerosity.

For its first point on appeal, SEECO argues that "the erroneous partial class for 'citizens of Arkansas' is an artifice with no logical relationship to the class or its interests, which renders Mr. Snow and his counsel unfit to represent SEECO's lessors." This is a theme to which SEECO returns throughout its brief. SEECO contends that if a class action is appropriate for these leases, it should include all such leases, not only those in the hands of Arkansas citizens. SEECO cites Rule 23(a)'s language that "[o]ne or more members of a class may sue or be sued as representative parties *on behalf of all*." (Emphasis added). According to SEECO, a "partial class" of Arkansas citizens is an artifice without a rational relationship to the claims and facts of this case and is designed solely to avoid federal jurisdiction. SEECO cites language from a footnote in an unpublished federal district court case to the effect that a citizenship requirement "when employed solely to preserve the class or for other litigation advantage, [is] generally unworthy of certification." *Elsea v. Jackson Cty.*, No. 10-0620-CV-W-ODS, 2010 WL 4386538, at *3 (W.D. Mo. Oct. 28, 2010), *abrogated by Hood v. Gilster-Mary Lee Corp.*, 785 F.3d 263 (8th Cir. 2015). We reject

SEECO's broad argument that there is something inherently wrong with limiting the class to citizens of Arkansas. However, we believe this argument is more appropriately addressed below, within the context of the particular certification requirements that SEECO challenges.

For its second point on appeal, SEECO challenges the circuit court's finding regarding adequacy. The adequacy criteria under Rule 23 require that the class representatives "fairly and adequately protect the interests of the class." Ark. R. Civ. P. 23(a)(4). This court has held that three elements are required under the adequacy criteria:

> (1) the representative counsel must be qualified, experienced and generally able to conduct the litigation; (2) that there be no evidence of collusion or conflicting interest between the representative and the class; and (3) the representative must display some minimal level of interest in the action, familiarity with the practices challenged, and ability to assist in decision making as to the conduct of the litigation.

*Beverly Enters.-Ark., Inc. v. Thomas*, 370 Ark. 310, 320, 259 S.W.3d 445, 452 (2007) (citing *Asbury Automotive Group, Inc.*, 366 Ark. at 605, 237 S.W.3d at 465).

Here, SEECO argues that class counsel's choice to represent part of SEECO's lessors creates conflicts that make them inadequate to represent any SEECO lessor. SEECO does not cite any authority for the proposition that limiting a class to Arkansas citizens amounts to claim–splitting and a conflict of interest for counsel. It does cite *Hunt v. McWilliams*, 218 Ark. 922, 240 S.W.2d 865 (1950), for the proposition that, in Arkansas, every party to a contract is an indispensable party to litigation affecting that contract and presents as an example a lease that passes by inheritance to a daughter domiciled in Arkansas and a son domiciled in another state. *Hunt* is distinguishable from the present case in that it concerned

the cancellation of an oil and gas lease, which necessarily affected the rights of royalty owners who had not had the opportunity to participate in the case. Here, as Snow points out in his brief, the rights of non-citizen royalty owners are not impaired, and they are free to pursue their claims in another class action or individually.

SEECO further argues that Mr. Snow is not an adequate class representative because he leaves too much decision-making to his attorneys, and he has an actual conflict with other SEECO lessors because his well is close to the interstate pipeline, which places him in conflict with those whose wells are far from the pipeline when a cost-of-service analysis is conducted.[5] Mr. Snow testified at deposition and at the certification hearing, and he expressed his willingness to represent the class. There is no requirement that he participate in the case to the extent suggested by SEECO (reviewing motions and reading depositions, directing his attorneys regarding how to proceed in litigation). The class representative need not be a legal expert or an oil-and-gas expert; rather, he must "display some minimal level of interest in the action, familiarity with the practices challenged, and ability to assist in decision making as to the conduct of the litigation." *See Beverly Enters.-Ark., supra.* The circuit court's determination that Mr. Snow met these requirements is not an abuse of discretion. Furthermore, the argument about the location of Mr. Snow's well goes to the merits of the case and the amount of damages he may be entitled to receive; it does not bar him from serving as class representative, as those same arguments could be made about any

---

[5] For any given leaseholder the charges for conveyance of the gas decrease the closer the leaseholder's well is to the interstate pipeline. SEECO contends that there is a conflict between leaseholders who are charged more and those who are charged less when a cost-of-service analysis is conducted.

potential representative—one royalty owner's well will always be closer or farther from the pipeline than other royalty owners' wells.

For its third point on appeal, SEECO challenges the circuit court's finding regarding "ascertainability," or the requirement that the identity of class members be ascertainable by objective criteria and be administratively feasible. First, we find no support in the record for SEECO's claim that the circuit court's findings on this point are based on the faulty legal premise that "citizenship" and "residency" are synonymous. Citizenship is synonymous with "domicile" and means "actual residence plus the intent to remain in a particular place." *See Leathers v. Warmack*, 341 Ark. 609, 618, 19 S.W.3d 27, 34 (2000). Nonetheless, intent may be shown through acts. *Id.* For business entities, the citizenship determination depends on multiple factors and turns on the type of entity at issue. In addressing the argument, the circuit court found as follows:

> The court concludes that Plaintiff has satisfactorily explained how class members will be identified by the use of Defendant's records and other publicly available information (objective criteria). Based on Defendant's records, over 70% of the roughly 8,000 royalty owner payees have Arkansas addresses, which leads the court to conclude that it is more likely than not that the citizenship of the class members should be ascertainable through objective criteria including the use and confirmation of public records such as voting registration records, property tax records, length of residence and other modes of inquiry, where necessary. Once an initial evaluation is made, with an understanding that it is more likely than not that those persons within Arkansas have a greater likelihood of being Arkansas citizens than those without the state, the court does not envision a problem with making any necessary citizenship determinations based on good faith challenges by Defendant.

We are satisfied that the circuit court did not abuse its discretion in finding that citizenship may be determined by objective criteria for most class members, with those questionable cases identified by SEECO requiring a determination by the court. We note that we have

previously accepted the argument that class members may prove their membership through affidavits or testimony. *Philip Morris Cos., Inc. v. Miner*, 2015 Ark. 73, at 16, 462 S.W.3d 313, 323. The circuit court is in the better position to determine administrative feasibility, and we hold that there was no abuse of discretion on this point.

For its fourth point, SEECO argues that the circuit court's order fails to define the "class claims" and to address the elements of each underlying cause of action. An order certifying a class action must define the class and the class claims, issues, or defenses. Ark. R. Civ. P. 23(b). Here, SEECO argues that the certification order requires speculation regarding which claims or elements will proceed on a class basis. However, we observe that the class is defined, the class claims turn on the allegation that the class has been underpaid on their royalties, and the causes of action are outlined in the complaint and certification order. We agree with Snow's argument that this point spills over into commonality and is better addressed there.

For its fifth point on appeal, SEECO argues that common questions do not predominate. Thus, SEECO challenges the circuit court's findings regarding commonality and predominance. Rule 23(a)(2) requires the circuit court to make a determination that "there are questions of law or fact common to the class." Rule 23(a)(2) does not require that all questions of law or fact be common; rather, the standard is that there need be only a single issue common to all members of the class. *Johnson's Sales Co. v. Harris*, 370 Ark. 387, 391, 260 S.W.3d 273, 276 (2007). Here, SEECO contends that the question whether it charged unreasonable post-production costs depends on the individual lease, the particular

well to which it is connected, and what post-production costs were charged. However, SEECO ignores that the class members were charged at the same postage-stamp *rate* for post-production costs; thus, there is a common question whether the rate SEECO charged is unreasonable. The circuit court identified multiple common issues, including "whether SEECO has breached, and continues to breach, the leases and statutory duties based on the SEECO's method of calculating and paying royalty." We see no abuse of discretion in the circuit court's finding that the commonality requirement had been met.

Next, SEECO contends that no common lease questions predominate over individual issues. Rule 23(b) requires that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members." Predominance is a more stringent requirement than commonality. *GGNSC Arkadelphia, LLC v. Lamb*, 2015 Ark. 253, at 10, 465 S.W.3d 826, 832. Here, in addressing the predominance requirement, the circuit court found that "the overreaching issues in this case are whether Defendant's course of conduct that was directed at both Plaintiff and the Class Members is a breach of the Plaintiff's and Class Members' identical lease clauses and a breach of Defendant's statutory duty to act 'as a prudent operator for the mutual benefit of the mineral lessor and mineral lessee' imposed by A.C.A. § 15-73-207." This court has held that the mere fact that individual issues and defenses may be raised by the defendant regarding the recovery of individual class members cannot defeat class certification where there are common questions concerning the defendant's alleged wrongdoing that must be resolved for all class members. *Gen. Motors Corp. v. Bryant*, 374 Ark. 38, 49, 285 S.W.3d

634, 643 (2008). The circuit court did not abuse its discretion in finding that the predominance requirement had been satisfied.

For its sixth point on appeal, SEECO challenges the circuit court's finding regarding typicality. The typicality requirement is satisfied if the representative's claim arises from the same wrong allegedly committed against the members of the class. *FirstPlus Home Loan Owner 1997-1 v. Bryant*, 372 Ark. 466, 476, 277 S.W.3d 576, 584 (2008). When analyzing this factor, we focus on the defendant's conduct and not the injuries or damages suffered by the plaintiffs. *Id*. Here, SEECO argues that the circuit court erred in finding typicality because Snow's lease contains a notice-of-breach clause requiring the lessor to notify the lessee in writing if the lessor believes the lease has been breached and to give the lessee sixty days to cure the alleged breach. According to SEECO, other leases may contain this provision, and Snow would have no incentive to argue that this provision is invalid and not required. It is SEECO's burden to show an abuse of discretion on appeal, and it has failed to show that the notice-of-breach provision even applies to claims for money damages, especially as to class members who themselves have not filed suit or taken any action.

For its seventh point on appeal, SEECO challenges the circuit court's finding regarding superiority. It argues that representative litigation is not superior in this case because Snow's "gerrymandered" class requires multiple law suits. Rule 23(b) requires "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." The superiority requirement is satisfied if class certification is the more "efficient" way of handling the case, and it is fair to both sides. *Baptist Health v. Hutson*,

SLIP OPINION

2011 Ark. 210, at 9, 382 S.W.3d 662, 668. Thus, the proper inquiry is whether the class action is superior to the thousands of individual law-suits that the class members might otherwise bring; SEECO's focus on the other two class actions against it, *Stewmon* and a class action in federal court, is misplaced. Furthermore, we have noted that the question of superiority is very much related to the broad discretion conferred on a circuit court. *Id.* (citing *FirstPlus Home Loan Owner 1997–1 v. Bryant,* 372 Ark. 466, 277 S.W.3d 576 (2008)). We see no abuse of discretion on this point.

For its final point on appeal, SEECO raises a procedural due-process argument. This argument is yet again focused on the "partial, gerrymandered class" of Arkansas citizens. SEECO contends that its federal and state constitutional rights to due process were violated by the certification of a class limited to citizens of Arkansas because that class prevents it from raising every available defense and, further, the existence of competing class actions sacrifices basic fairness. We do not address SEECO's due-process arguments because, as SEECO conceded at oral argument, the circuit court did not rule on them below. The failure to obtain a ruling on an issue, even a constitutional one, precludes our review on appeal. *Meador v. Total Compliance Consultants, Inc.*, 2013 Ark. 22, at 4–5, 425 S.W.3d 718, 721.

As a final note, we address a pending motion in this case. After the briefs were filed in this appeal, a "Notice of Various SEECO Royalty Owners That They Are Exercising Their Right to Opt Out of This Class Litigation If It Is Finally Certified" was filed in this court; the 248 royalty owners who wish to opt out were listed in an attached exhibit. Appellees have filed a motion to strike this notice, and the 248 royalty owners have

14

responded. We find it unnecessary to comment on the necessity or propriety of this notice, and we deny the motion to strike the notice of opt out.

Affirmed; motion to strike denied.

Special Justices BOB ESTES, SCOTT P. RICHARDSON, and M. SCOTT WILLHITE join.

BRILL, C.J., and WOOD, J., concur.

DANIELSON, BAKER, and GOODSON, JJ., not participating.

**RHONDA K. WOOD, Justice, concurring.** I agree with the majority that this class-certification order can be affirmed, but I do not join the analysis regarding the class definition. I write to point out that this class action might have significant manageability problems going forward. The crux of this problem lies with the class definition, which needlessly limits the class to citizens of Arkansas. I am not suggesting that all class actions should be "national." However, in this case, the more prudent class definition would have been "all holders of a royalty interest in the applicable leases on interests in Arkansas." The appellees can give no explanation as to why the class definition is limited to "Arkansas citizens" other than "we are the plaintiffs and we get to control our case."

It is clear to me that the definition was designed to keep this case out of federal court. While the plaintiff is the captain of its case, this should not exclude all other considerations. I am troubled that the circuit court allowed this consideration to guide its class-certification order. The best practice is to ignore these forum-shopping concerns and instead focus on efficiency, which at any rate is the primary purpose of the class-action mechanism. *See Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 402 (2010) (stating that

the federal "Rule 23 [is] designed to further procedural fairness and efficiency"). A broadly defined class, which can resolve the dispute for everyone, better achieves the class-action mechanism's purpose. *See, e.g.*, *BNL Equity Corp. v. Pearson*, 340 Ark. 351, 361, 10 S.W.3d 838, 844 (2000) ("The avoidance of a multitude of suits lies at the heart of any class action certification."); *Philip Morris Companies, Inc. v. Miner*, 2015 Ark. 73, at 14–15, 462 S.W.3d 313, 321–22 ("A class action saves [the defendant] the trouble of defending multiple . . . claims across the state. . . . In other words, both parties benefit from the more efficient process of having the issue of [liability] litigated in one setting.").

While the appellees are correct that to be efficient, a class does not have to include every conceivable litigant, the class still has to be manageable. The current class definition presents a significant problem: the circuit court will likely have to face an issue involving leases co-owned by an Arkansas citizen and a non-Arkansas citizen. Under *Hunt v. McWilliams*, all holders of a royalty interest under a lease are indispensable parties to litigation surrounding that lease. 218 Ark. 922, 240 S.W.2d 865 (1950). If the record had established definitively the number of lease owners who owned leases jointly with Arkansas citizens, then I would have reversed the circuit court's decision to certify this class.

Unfortunately, I see a likelihood that the circuit court will have to decertify the class. Once one Arkansas citizen joins the class and that citizen co-owns the lease with one or more citizens of another state, the circuit court will have to reevaluate the class. Will that Arkansas citizen still be a member of the class? Will the non-citizen now be a member of the class and destroy jurisdiction? What if the Arkansas co-owner of the lease joins this class and the non-citizen co-owner of the lease joins the federal class? The class definition, as

16

written, does not provide a solution to these problems. SEECO argues that this could lead to manageability issues and, while not an appropriate basis upon which to reverse at this point, I agree that such a problem exists. I do not see how the certification will withstand these issues. The circuit court will likely have to decertify the class should this issue cause problems in the future. *See Farmers Union Mut. Ins. Co. v. Robertson*, 2010 Ark. 241, at 15, 370 S.W.3d 179, 188 ("[A] circuit court can always decertify a class should the action become unmanageable.").

BRILL, C.J., joins.

*Kutak Rock LLP*, by: *Jess Askew III* and *Luke Burton*; *Hardin, Jesson & Terry, PLC*, by: *Rex M. Terry*; *Daily & Woods, P.L.L.C.*, by: *Thomas A. Daily* and *Jerry L. Canfield*; and *Locke Lord LLP*, by: *Michael V. Powell*, for appellant.

*The David Hodges Law Firm*, by: *David A. Hodges*;*Caruso Law Firm, P.C.*, by: *Dennis A. Caruso* and *Mark Smith*; *Smolen, Smolen & Roytman, PLLC*, by: *Daniel E. Smolen*, for appellee.